ROBERT T. KREBS *et al.*, Plaintiffs-Appellants, *v.* ALBERT A. MINI, Defendant-Appellee.

Second District   No. 76-284

Opinion filed October 6, 1977.

William E. Hartnett, of Waukegan, for appellants.

Wasneski, Yastrow, Kuseski & Flanigan, of Waukegan, for appellee.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

Plaintiffs, Krebs and Kann, appeal from the trial court's entry of an order vacating a temporary restraining order, and dismissing their amended petition for a temporary restraining order.

Krebs, Kann and Mini entered into an arrangement involving the purchase of the stock of the corporation known as C.I.S., Inc., under which Mini would provide the necessary funds to purchase C.I.S., while Krebs and Kann would undertake the day-to-day management of the corporation, and eventually would receive one-third each of the corporation's stock.

The C.I.S. stock was purchased, and Krebs and Kann undertook the management of the corporation. No stock was ever transferred or issued to Krebs or Kann and on December 24, 1975, Mini informed them that their relationship with C.I.S. was terminated, and demanded that they turn over their keys to the C.I.S. offices. Krebs and Kann instituted the instant action on that same day by filing a petition for a temporary restraining order.

The petition alleged that Mini was seeking to "oust" Krebs and Kann from their interest in C.I.S., Inc., and that unless Krebs and Kann were able to continue to operate C.I.S. "on Monday morning, December 29, 1975" they would be "injured irreparably with their customers," giving "their competitors" an unfair advantage and lowering "the equity value of the stock in the corporation which they were purchasing." The only relief prayed for in the petition was a temporary restraining order restraining Mini from interfering with Kreb's and Kann's operation of C.I.S. The temporary restraining order prayed for was entered without notice that same day, December 24.

Mini filed an answer to the petition for a temporary restraining order on December 31, 1975. On January 5, 1976, Krebs and Kann filed a complaint at law against Mini and his attorney, Paul Sugar, seeking $1,500,000 in compensatory and punitive damages against each. The basis for their action at law was substantially the same as the grounds alleged in their petition for a temporary restraining order. On January 21, 1976, Krebs and Kann filed an amendment to their petition for a temporary restraining order. In the amendment they prayed for a "finding" that there was a partnership or joint venture agreement between Krebs, Kann and Mini, and asked that the court declare that Mini "holds two-thirds of the stock as a trustee" for the benefit of Krebs and Kann. On January 23, 1976, the court heard evidence regarding the petition, the hearing having been continued to that date, apparently by agreement.

At this hearing, Krebs and Kann testified that informal discussions with Mini regarding the acquisition of C.I.S. had been held as early as May of 1973. Both Krebs and Kann were extremely familiar with the operations of C.I.S., whose corporate predecessor, Caldwell Industries, had been

owned by Krebs. According to their testimony, it was agreed from the very outset that each was to "have one-third of the business." Shortly before C.I.S. was purchased, Krebs, Kann, Mini, and attorney Fisher, acting as counsel for Mini, had a meeting. Attorney Fisher expressed his dissatisfaction with the whole proposal. Krebs testified that he responded that "he was not interested in working for Mr. Mini" and that he would be a "partner" with Mini "and that's the only way."

In March of 1973, the C.I.S. stock was purchased for $76,200 and transferred to Illinois Carbide Tool Company, which is a corporation wholly owned by Mini. Krebs and Kann admitted that the purchase price was obtained or provided by Mini, and that they did not contribute any money toward the purchase of C.I.S. On appeal, Mini argues that Illinois Carbide provided $50,000 of the purchase price through a loan to C.I.S., and the record supports this contention.

At or around the time of the purchase of C.I.S., the three parties signed a one-page document entitled "MEMORANDUM REGARDING CIS, INC.," which provided in part that:

> "1. Profits of business shall be divided in the following manner: ½ of profits to be used for purchase of stock. Remaining thirds to be divided equally.
> 2. Krebs and Kann each to be permitted to purchase 1/3 of stock after all loans by Mini or Illinois Carbide are paid.
> 3. Purchase price shall be $25,000 for each 1/3 of stock."

Krebs and Kann testified that they undertook the operation of the business after the purchase, at an initial salary of $475 per week, a salary which was increased to $575 per week. Both freely admitted that they had taken bonuses totaling $13,000 each from C.I.S. funds from January to April, stating that they had done so with the hearty approval of Mini. Mini, though president of C.I.S., was never paid any bonus.

On November 5, 1974, Krebs and Kann sent a check for $12,500 to Mini. The check was drawn on C.I.S.'s checking account and was accompanied by a memorandum to Mini, stating that the check "represents payment to Illinois Carbide Tool Company for 25% of the purchase price for 2/3rds of the common stock of C.I.S., Inc., as per our agreement." The memo requested that 1,666 2/3 shares (out of a total of 20,000 shares of C.I.S.) be issued to Kann, and a like number to Krebs. At the bottom of the memorandum were the words "Agreed to and Accepted" and a signature line, where they obtained Mini's signature. On February 12, 1975, a second C.I.S. check for $12,500 was sent to Mini, with a similar memo requesting the issuance of C.I.S. stock to Krebs and Kann, and they again obtained Mini's signature on the memorandum. On March 18, 1975, a third C.I.S. check, in the amount of $8,000 was mailed to Mini, accompanied by a memo from Krebs and Kann which did not mention

the matter of C.I.S. stock but recited that "with this check, the total amount returned to Illinois Carbide Tool Company is $33,000."

Krebs and Kann introduced a financial statement reporting the financial condition of C.I.S. as of December 31, 1974. Though not audited, the statement showed a deficit in C.I.S.'s retained earnings account of $44,112.92. Kann testified that C.I.S. had had a "$60,000 tax loss" for its first year of operation, 1973. Kann testified that it was his recollection "to the best of my knowledge" that C.I.S. had a net profit of $30,000 as of November of 1974.

Mini was called as a witness under section 60 of the Civil Practice Act. He stated that he had violently protested the memoranda which had accompanied the checks of November 5, 1974, and February 12, 1975, telling Krebs and Kann that until he got the money he had invested in C.I.S., Krebs and Kann could not purchase any stock, and that, in any case, they could only purchase stock out of half of the profits of the corporation. He said that he accepted the checks because he decided that he had "better take the money" or he "might not ever see it." He also testified that he never authorized Krebs and Kann to take bonuses, and had only learned of the bonuses afterward.

The trial court took the matter under advisement at the conclusion of the petitioners' evidence. The court subsequently filed an order which made certain specific findings from the evidence presented at the hearing on the temporary restraining order. The court found that the "bonuses" taken by Krebs and Kann were unauthorized and unconscionable, that "there is no evidence of a joint venture," and that the "contingencies set forth in the stock purchase and memorandum" were not met. The court therefore vacated the temporary restraining order and dismissed the amended petition for a temporary restraining order.

During oral argument, counsel for Mini advised this court that Mini has filed a suit against Krebs and Kann, seeking $26,000 in damages for the "bonus" taken by Krebs and Kann, and an accounting.

■■ We begin by observing that the trial court could not have committed reversible error in vacating the temporary restraining order. Section 3—1 of the Injunction Act (Ill. Rev. Stat. 1975, ch. 69, par. 3—1) provides that where a temporary restraining order is entered without notice, "the motion for a preliminary injunction shall be set down for hearing at the earliest possible time," and that:

> "* * * [W]hen the motion comes on for hearing the party who obtained the temporary restraining order shall proceed with the application for a preliminary injunction and, *if he does not do so, the court shall dissolve the temporary restraining order.*" (Emphasis added.)

Since Krebs and Kann never moved for a preliminary injunction, the

vacation of the temporary restraining order, at the conclusion of the hearing, was mandated by the applicable statute. See *Bohn Aluminum & Brass Co. v. Barker* (1972), 3 Ill. App. 3d 600, 602, *rev'd on other grounds, Bohn Aluminum & Brass Co. v. Barker* (1973), 55 Ill. 2d 177.

In fact, the only pleading filed by Krebs and Kann in this cause is their petition for a temporary restraining order and the amendment to that petition. If the petition is narrowly construed, the above cited statute is dispositive of this appeal. Counsel for Krebs and Kann has argued that their amendment to the petition for the temporary restraining order converted the case into an action on the merits; yet, this argument is muddled considerably by the fact that, as far as this cause is concerned, they have not requested either of the forms of relief customarily sought by litigants who claim to have suffered a loss due to the breach of a contract—money damages, or specific performance. Of course, an action for money damages is pending elsewhere.

Krebs and Kann also failed to make any clear prayer for the entry of a declaratory judgment. The amendment to their petition does pray for a "finding" "that there exists a partnership or joint venture between or among" Krebs, Kann and Mini, and that the court "declare" that Mini holds two-thirds of the stock of C.I.S. as trustee for Krebs and Kann. Since the statute authorizing courts to enter declaratory judgments does not prescribe any particular form of prayer for the entry of such a judgment, and further provides that a declaratory judgment may be sought as an incident to or part of a pleading seeking other relief (Ill. Rev. Stat. 1975, ch. 110, par. 57.1), the amendment to the petition sufficed to raise the question of whether the trial court should enter a declaratory judgment holding the parties to be partners or joint adventurers, and two-thirds of the stock held by Mini to be in a constructive trust for Krebs and Kann.

Since the granting or denial of declaratory relief is a matter of the court's discretion, the question presented to this court is a narrow one, limited to a determination of whether or not the trial court abused its discretion in failing to grant the declaration which Krebs and Kann sought. (*Bruns v. Foremost Insurance Co.* (1975), 27 Ill. App. 3d 50; *Salk v. Department of Registration & Education* (1970), 123 Ill. App. 2d 320; *Hoerdt v. City of Evanston* (1968), 99 Ill. App. 2d 307, *cert. denied* (1969), 395 U.S. 944, 23 L. Ed. 2d 462, 89 S. Ct. 2016.) Our analysis indicated that the trial court did not abuse its discretion.

■■ It has been held in numerous cases that a trial court does not abuse its discretion when it refuses to grant a declaratory judgment which would have the effect of determining the issues or the validity of the defenses in a pending case. (See *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187; *Fairbanks Morse & Co. v. City of Freeport* (1955), 5 Ill. 2d 85; *Farmers Oil & Supply Co. v. Illinois Central R.R. Co.* (1972), 6

Ill. App. 3d 965; *Liberty Mutual Insurance Co. v. Duray* (1972), 5 Ill. App. 3d 187; *Trojan Fireworks Co. v. Acme Specialties Corp.* (1965), 66 Ill. App. 2d 108.) Here, Krebs and Kann filed a complaint at law, containing the same allegations and raising all of the issues raised by their petition for a temporary restraining order, and that action at law was pending when they filed the amendment to their petition requesting a "finding" and declaration by the trial court. On this basis alone, the trial court would not have abused its discretion if it determined that the pending action at law was a more appropriate forum for the resolution of the issues raised in the amended petition.

■■ Further, the Civil Practice Act provides that "[t]he court shall refuse to enter a declaratory judgment, decree or order, if it appears that the judgment, decree or order, would not terminate the controversy or some part thereof, giving rise to the proceeding." (Ill. Rev. Stat. 1975, ch. 110, par. 57.1.) Here, a declaratory "finding" by the trial court that the parties were partners or joint adventurers would still leave the parties locked in mortal litigation over such questions as what the terms of the "partnership" or "joint adventure" agreement were and whether or not there had been a breach of those terms. A declaration that Mini held two-thirds of the stock of C.I.S. as trustee for Krebs and Kann would not solve the problem of when, and under what terms, the stock would actually be issued or transferred to them. Thus, the granting of the relief prayed for by Krebs and Kann would not "terminate the controversy or some part thereof," and would have led to the use of a declaratory judgment for the kind of piecemeal resolution of matters in controversy, which the Civil Practice Act prohibits. See *Farmers Insurance Group v. Harris* (1972), 4 Ill. App. 3d 372.

Even apart from these considerations, a review of the evidence, adduced at the hearing on the temporary restraining order, indicates that the record would not support either the "finding" of a joint adventure or partnership or the declaration of a constructive trust.

■■ The form of business selected by the parties was clearly that of a corporation. The memorandum executed at the time of, or shortly after, the purchase of the C.I.S. stock, as well as the memoranda of November 5, 1974, and February 12, 1975, are all phrased in terms of a stock acquisition, rather than a partnership or joint adventure agreement. There is no evidence that the parties held themselves out as partners, declared C.I.S. income on their individual tax returns, or filed a partnership tax return. There was evidence that the parties agreed to share equally in the profits of C.I.S., but mere participation in the profits does not, in itself, create a partnership. (*Rizzo v. Rizzo* (1954), 3 Ill. 2d 291, 300.) In this context, the fact that term the "partner" was used during discussions prior to the purchase of the C.I.S. stock is of little significance since the par-

ties eventually opted to operate C.I.S. as a corporation, with Krebs and Kann having, under certain conditions, the right to obtain two-thirds of the corporation stock. Krebs and Kann, as the parties asserting the existence of a partnership or joint adventure, had the burden of proof (*Wagner v. Wagner* (1958), 17 Ill. App. 2d 307), and they clearly failed to meet that burden.

■■ Similarly, the burden of proving the existence of a constructive trust is on the person seeking to establish it (*Bremer v. Bremer* (1952), 411 Ill. 454). A transaction may be the basis for creating a trust where for any reason one party holds property which in equity and good conscience should be possessed by another. (35 Ill. L. & Prac. *Trusts* §64 (1958).) Here, Krebs and Kann made no showing of an equitable entitlement to the C.I.S. stock. The evidence which they presented tended to show that they were only to be allowed to purchase C.I.S. stock *after* all debts to Mini or Illinois Carbide had been paid, and it was established that Mini and Illinois Carbide had not been repaid. Furthermore, such repayment was to be made from profits of C.I.S., yet the financial statements for 1974, which Krebs and Kann introduced, showed a deficit in C.I.S.'s retained earnings account of $44,112.92, and Kann admitted that C.I.S. had suffered a tax loss of $60,000 for 1973. Although Kann also recalled that C.I.S. had had a profit of $30,000, the trial court was not, under the circumstances, bound to credit that testimony. While the memoranda of November 5 and February 12 recited that the accompanying checks were to be applied to the purchase of C.I.S. stock, these memos were clearly contrary to that executed at the time of the stock purchase, and were not supported by any consideration, and therefore cannot be regarded as having modified the agreement between the parties. Krebs and Kann thus failed to introduce sufficient evidence to demonstrate the performance of conditions upon which the issuance or transfer of stock to them was contingent. The trial court was also justified in finding, on the proofs before it, that the $26,000 in bonuses taken by Krebs and Kann were taken without the knowledge or consent of Mini; this constituted an apparent breach of the agreement between the parties, particularly since no similar sum was ever paid to Mini. In sum, Krebs and Kann failed to meet their burden of demonstrating an entitlement to a constructive trust over two-thirds of the C.I.S. stock.

The ultimate resolution of the matters at issue between these parties shall have to await the disposition of the actions now pending between them. However, we hold that the trial court did not err in refusing to grant Krebs and Kann the relief which they requested in their petition for a temporary restraining order, as amended.

The judgment of the circuit court of Lake County is therefore affirmed.

Krebs and Kann have filed a motion in this court to amend their

complaint pursuant to section 46 of the Illinois Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 46(3)), to more fully incorporate their theory of an "oral joint adventure" agreement. Since the proofs introduced do not support the existence of such an agreement, the motion is denied.

Judgment affirmed.

SEIDENFELD and NASH, JJ., concur.