**Eleanor SARAFIN, on behalf of herself and all other persons similarly situated, Plaintiff,**

v.

**SEARS, ROEBUCK AND COMPANY, INCORPORATED, Defendant.**

**No. 74 C 2957.**

United States District Court, N. D. Illinois, E. D.

Feb. 21, 1978.

Robert Gonnella, Elmhurst, Ill., Philip F. Ignarski, Oak Forest, Ill., Ralph Gonnella, Providence, R. I., for plaintiff.

Peter D. Kasdin, Arnstein, Gluck, Weitzenfeld & Minow, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

MARSHALL, District Judge.

Plaintiff Eleanor Sarafin is a retail purchaser who claims she has received consumer credit under an "Easy Payment-Modernizing Credit Plan" (the Plan) offered by defendant Sears, Roebuck and Company, Inc. (Sears). In her second amended complaint, she charges that in extending credit under this plan Sears failed to disclose the annual percentage rate of the finance

charges on its monthly billing statements. Sears' omissions allegedly violate the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, which permits aggrieved consumers to bring civil actions against creditors in the federal courts. 15 U.S.C. § 1640. Sarafin seeks to represent a class composed of all Illinois residents who have obtained consumer credit under the Plan within one year prior to the filing of this suit.

In their original complaint, plaintiff and her husband only sought monetary relief on behalf of the class. The requested statutory relief included applicable finance charges, civil penalties of between $100 and $1,000, reasonable attorneys' fees, and costs. No actual damages were claimed.

On January 10, 1977 we certified the requested class of Illinois consumers under Rule 23(b)(3). We noted that defendant's estimate of class membership exceeded 300,000 persons and that use of the class action device here would severely limit the damage recoveries of individual class members. Because the applicable section of the Act set a $100,000 limit on statutory damages in class actions such as this one, each class member could recover no more than 30 cents if the plaintiffs prevailed. This recovery would have been a fraction of the amount each member might obtain as an individual plaintiff. In individual actions, each member could receive between $100 and $1,000 in civil penalties alone. We concluded that the financial disadvantages of a class action would be acceptable if each class member were notified of the alternative measures of damages. Accordingly, we directed that "the notice must clearly inform the potential class member that he may have a right of recovery against Sears, that he may pursue his rights separately from the class, but that if he joins the class his prospects for recovery will be drastically reduced."

Following our order, plaintiffs began discovery procedures to establish the size of the class more precisely. They hoped that the elimination of non-qualifying accounts would reduce the class membership and thus make a class action more attractive and more manageable. That hope fizzled out. The class estimate still exceeds 300,-000 persons. The costs of notifying a class of this size are very large. The burden of prosecuting the class action increased even further when John Sarafin, one of the two named plaintiffs in the original complaint, died on March 29, 1977. His wife Eleanor has stated by affidavit that she now feels unable to bear the burden of the litigation by herself.

To lighten these burdens, plaintiff decided to convert the basis of her class action from Rule 23(b)(3) to 23(b)(2). This modification allows plaintiff to bypass the mandatory notification procedures in Rule 23(c)(2),' and thus to avoid the expense of mailing notice to 300,000 persons. In conformity with this amendment, however, plaintiff has had to eliminate her demand for monetary relief, since 23(b)(2) was not intended to encompass cases where the primary relief is in the form of money damages. The second amended complaint therefore asks for an injunction restraining Sears from violating the Act in issuing billing statements under the Plan. Sarafin also asks for a mandatory injunction requiring Sears to notify qualifying account holders under this Plan of their right to present individual damage claims under the Act. The demand for reasonable attorneys' fees and costs is retained in unaltered form.

Sears has moved to dismiss the second amended complaint. Sears argues that injunctive relief has been mooted by its discontinuation of the challenged billing practices and its termination of the entire "Easy Payment-Modernizing Credit Plan." Alternatively, Sears contends that the complaint provides no basis for equitable relief since each class member has an adequate remedy at law by suing for money damages under the Act.

■■■ We agree with Sears that plaintiff's request for future injunctive relief against statutory violations is moot. Although the presence of damage claims for past statutory violations normally creates a sufficient controversy to prevent a mootness conclusion, Sarafin has voluntarily ex-

cised these claims from her second amended complaint. Only equitable claims remain. The mootness of these claims is determined by an individualized prediction of the defendant's future behavior. The court's power to grant injunctive relief survives the voluntary cessation of the illegal conduct, but there must be a reasonable probability that the statutory violations will recur. *United States v. W. T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953).

Sears has presented the affidavit of its Assistant General Credit Manager, Mr. Weimer, to demonstrate the unlikelihood of a future resumption of the alleged statutory violations. Weimer states that the "Easy Payment Plan" was one of several credit plans formerly available to Sears' Illinois customers. These plans each had their own forms, terminology and computer programming. On September 1, 1976, to simplify its credit procedures, Sears merged its several plans into a single credit plan known as "Sears Charge." No Easy Payment Plan accounts were offered after that date, and Sears does not expect to reinstitute this plan. Weimer also states that on September 1, 1974, approximately one month before the present suit was filed, Sears began a uniform practice of disclosing the annual percentage rate of its finance charges in every monthly billing statement. Weimer says that Sears commenced this practice before it was aware of any legal claims, and that there may have been earlier non-disclosures "because of computer programming." Finally, Weimer states that Sears has reviewed its periodic billing statements and has found that the annual percentage rate was disclosed until the discontinuance of the Easy Payment Plan in Illinois on September 1, 1976.

Sarafin does not rebut this showing by presenting counter-affidavits. Plaintiff's only documentary evidence consists of an exhibit to the original complaint. That document is a billing statement under Sears' Easy Payment Plan dated October 20, 1973. The statement reports an outstanding balance of $22.66 and a current monthly payment of $12.00. The space in the column for "ANNUAL PERCENTAGE RATE" is blank. Other than this solitary missive, we have only plaintiff's unsupported statements in her brief that similar non-disclosures accompanied her billing statements for more than five months. To build these alleged past violations into a continuing and present threat, Sarafin emphasizes that 1) the Easy Payment Plan continued for 11 months after the present suit was brought, 2) there may be some accounts under the old plan which had unpaid balances at the date of termination and which have been carried over on similar terms, and 3) Sears continues to use a consumer credit plan which is subject to the requirements of the Truth in Lending Act.

We believe these facts do not establish a cognizable danger of recurrent violations. The existence of one proven past non-disclosure in a discontinued consumer credit plan and the continuing operation of a new plan in which similar disclosures must be made do not give rise to a reasonable threat of future misconduct. Accordingly, plaintiff's second amended complaint does not support a claim for prohibitory injunctive relief.

Recognizing that class-wide damage claims are unmanageable and that future injunctive relief may be nonjusticiable, plaintiff offers an alternative remedial theory. She requests a declaratory judgment that Sears' past billing practices resulted in repeated violations of the Truth in Lending Act. If Sears is found liable, Sarafin asks that we exercise our equitable powers to fashion a mandatory injunction directing Sears to issue notice to class members who received defective billing statements of their right to present individual damage claims. This course offers several advantages to Sarafin. It settles the substantive liability issue in one judicial proceeding. It shifts the enormous costs of notification of class members from plaintiff to Sears. And it leaves the vagaries of individual damage claims to separate tribunals. In short, it gives Sarafin the benefits of a class action without the bother.

The Declaratory Judgment Act of 1934, now 28 U.S.C. § 2201, provides that in a case of actual controversy a federal court "may declare the rights and other legal relations" of a party, "whether or not further relief is or could be sought." Declaratory relief under this section is discretionary. That discretion must be exercised for a reason related to the purposes of the Act. *Sears, Roebuck & Co. v. American Mutual Liability Insurance Co.*, 372 F.2d 435, 438 (7th Cir. 1967). The primary purpose of the Act is to "avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage has accrued." *Cunningham Brothers, Inc. v. Bail*, 407 F.2d 1165, 1167–68 (7th Cir. 1969). Therefore, relief is proper either "1) where the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; or 2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings." *Maryland Casualty Co. v. Rosen*, 445 F.2d 1012, 1014 (2d Cir. 1971).

Plaintiff here is not attempting to settle a controversy before it ripens into a legal liability, nor is she trying to terminate litigation. On the contrary, the declaratory relief she requests would operate as a prelude to or preparation for a myriad of individual damage claims. Courts have declined to entertain actions for a declaratory judgment where the declaration would result in piecemeal litigation or would try particular issues without settling the entire controversy. *See Public Service Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 245–46, 73 S.Ct. 236, 97 L.Ed. 291 (1952); *Allstate Ins. Co. v. Philip Leasing Co.*, 214 F.Supp. 273, 275 (W.D.S.D.1963). It is not necessary to put the entire dispute to rest, but the issues must be separable so that an important and autonomous part of the controversy can be finalized. 6A Moore's Federal Practice, ¶ 57.08[4] (2d ed. 1974).

The liability and damages issues here may be amenable to separate treatment. If, as Sears suggests, past nondisclosures may have been the result of faulty computer programming, the discovery of that defect may greatly simplify proof of statutory violations. Plaintiff would not have to investigate billing statements on a one-by-one basis, but could isolate the ·period of noncompliance by discovering when the computer program was in effect. Class-wide determination of liability is expeditious when the statutory violation flows from a unitary set of facts. The damages issue could then be decided in individual cases by computing the applicable finance charges and other data on the offending billing statements.

Nevertheless, we see another boulder in plaintiff's suggested route. The use of a declaratory judgment in a class action where the real goal is a damage award undermines the purpose of Rule 23(b)(2). This subsection was not intended to "extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." 1966 Advisory Committee Note to Rule 23. 28 U.S.C.A. Rule 23 at 298. Rather, the Rule by its terms speaks to cases where, on behalf of the class as a whole, "final injunctive relief or *corresponding* declaratory relief" is appropriate. According to the Committee, "declaratory relief 'corresponds' to injunctive relief when as a practical matter it affords injunctive relief or serves as a basis for later injunctive relief." *Id.* at 298. In other words, the declaratory judgment should perform the same function as an injunction. It should not lay the basis for a later damage award. See 7A, Wright & Miller, Federal Practice & Procedure, § 1775 at 22 (1972). Sarafin seeks a declaration that Sears' conduct violated the Truth in Lending Act. The effect of such a declaration would be to provide the foundation for later damage claims, not injunctive relief. Therefore Sarafin's suggested procedure is not a proper use of Rule 23(b)(2).

Declaratory relief is properly refused if it would be incompatible with traditional procedures for the adjudication of civil cases. For example, in *Cunningham Brothers, Inc. v. Bail*, 407 F.2d 1165 (7th

Cir. 1969), a general contractor sought a declaration that it was not liable to workers who were injured in an accident at the construction site. The court held that the Declaratory Judgment Act was not intended to enable a potential tort defendant to obtain a declaration of non-liability. The court reasoned that such a reversal of roles of the parties would upset traditional procedures available to plaintiffs in negligence actions, since it would deny them their right to choose the forum and the time to assert their claims. The tort plaintiffs would be forced to counterclaim against the defendants at a time when the full extent of their damages may not have crystallized, and would be forced to join their claims in a single action in a possibly inconvenient court.

The use of a declaratory judgment in the present action is similarly inconsistent with established methods of civil procedure. It cuts against the grain of Rule 23(b)(2) by using declaratory relief as the predicate for later damage claims. It reverses the normal roles of the parties with respect to the burden of notifying unnamed class members. And it has the effect of delaying notice until after the liability issue has been decided, thereby depriving class members of input on the presentation of their case on the liability issue and resulting in piecemeal litigation.

Therefore, we hold that this action is inappropriate for declaratory relief and for the accompanying mandatory injunction which Sarafin requests as an adjunct to a declaratory judgment.[1] Sears' motion to dismiss the second amended complaint is granted. Judgment will enter dismissing plaintiff's action.

---

1. In her prayer for relief, Sarafin only requests a mandatory injunction "upon the successful conclusion of this litigation." The request for notification relief is expressly dependent on her action for a declaratory injunction and prospective injunctive relief, and is not framed as an independent and severable demand. Since we have found no basis for either of these forms of relief, it is unnecessary to consider whether the complaint states a claim for notification relief alone. See, e. g. Jordan v. Trainor, 563 F.2d 873 (7th Cir. 1977).