VACOUNTESS MARLOW *et al.*, Indiv. and on Behalf of All Others Similarly Situated, Plaintiffs-Appellants, v. AMERICAN SUZUKI MOTOR CORPORATION, Defendant-Appellee.

First District (6th Division)   No. 1—90—2648

Opinion filed December 2, 1991.

Robert A. Holstein, C. Corey, S. Berman, Thayer C. Torgerson, and Donald A. Horowitz, all of Holstein, Mack & Klein, of Chicago, for appellants.

John J. Pappas and Debra K. Marcus, both of Pappas, Power & Marcus, and Edward M. Crane, James F. Martin, and Antonio D'Amico, all of Skadden, Arps, Slate, Meagher & Flom, both of Chicago, for appellee.

JUSTICE EGAN delivered the opinion of the court:

The plaintiffs individually and as representatives of a class sought a declaratory judgment that a motor vehicle manufactured by Suzuki Motor Companies and sold to 150,000 persons throughout the United States was defectively designed.

The plaintiffs were Natheree Marlow, Frank Forest and Heidi Gallegos, individually and as representatives of a class of all persons who purchased or leased or were or are owners or lessees of the Suzuki Samurai automobile; and Vacountess Marlow and Virginia Gallegos, individually and as representatives of a class of all persons who were injured during the operation of or while a passenger in a Suzuki Samurai automobile that rolled or flipped over or otherwise lost control due to manufacturing or design defects in the vehicle. Only Vacountess Marlow and Virginia Gallegos are involved in this appeal. The claims of Natheree Marlow, Frank Forest and Heidi Gallegos were voluntarily dismissed.

The defendants were American Suzuki Motor Corporation (American Suzuki), a California corporation, Suzuki Motor Companies, a Japanese corporation, the manufacturer of the Samurai automobile, Bauer Buick Company, a foreign corporation doing business in Illinois, and Ed Murphy Suzuki, an Illinois corporation. Only American Suzuki is involved in this appeal; the other defendants were dismissed on the plaintiffs' motion.

The plaintiffs filed a five-count complaint with a jury demand, alleging that the Samurai automobile is defective in design or production in that it suddenly and unintendedly rolls over when the driver operates the vehicle at normal operating speeds and under normal driving conditions. The complaint alleged, on information and belief, that the defects have resulted in numerous auto accidents. Counts I through IV were brought by Natheree Marlow, Heidi Gallegos and

Frank Forest. Count I alleged a violation of an implied warranty; count II alleged a violation of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1989, ch. 121½, par. 261 *et seq.*); count III alleged fraud; and count IV alleged a breach of an express warranty. Count V was brought by Vacountess Marlow and Virginia Gallegos and requested a declaration pursuant to the declaratory judgment provision of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—701) that the Suzuki Samurai is unreasonably dangerous as a result of design and manufacturing defect. Count V specifically recited that the plaintiffs were not "seeking a determination of liability" nor asking "for a determination of proximate cause of the numerous serious injuries involving individual members of the class." Included in the relief sought under count V were a request to issue an order finding the Samurai defective in design and for the establishment of a "claims procedure for informal arbitration procedures *** to adjudicate the individual personal injury claims of the class members including the proximate cause and individual damages issued for each claim."

The plaintiffs' attorney had previously filed a class action suit on June 24, 1988, against American Suzuki, which in substance was identical to the allegations later made in counts I through IV of this action and sought identical relief. American Suzuki removed that case to the Federal court, along with four other virtually identical nationwide class actions that had been filed in the circuit court of Cook County at that time. While motions to remand those cases to the circuit court were pending, the plaintiffs' attorney voluntarily dismissed that case. The four actions remaining in the Federal court were subsequently found to have been properly removed and were transferred by the Judicial Panel on Multidistrict Litigation to the United States District Court for the Eastern District of Pennsylvania, where they were consolidated into multidistrict proceedings along with other actions that had been filed in the Pennsylvania, New Jersey and California Federal courts.

The plaintiffs filed this action while the multidistrict proceedings were still pending. The plaintiffs, however, named two Illinois automobile dealerships (Bauer and Murphy) as additional defendants. The defendants later contended that the two Illinois automobile dealerships were named to destroy citizenship diversity and to preclude removal of this action to the Federal court for consolidation into the multidistrict proceedings. Count V in the complaint before us had not been filed in the previous action which had been removed to the Federal court. American Suzuki moved to dismiss count V for failure to

state a claim and to stay counts I through IV pending the outcome of the parallel multidistrict proceedings. The plaintiffs voluntarily dismissed their claim in the multidistrict proceedings. American Suzuki then moved to dismiss counts I through IV for failure to state a claim.

On February 14, 1990, the judge dismissed counts I through IV and granted the plaintiffs leave to amend on or before March 14, 1990. Count V was dismissed with leave to amend on or before February 28, 1990. No action was taken for nearly five months.

The plaintiffs, without ever amending count V, asked the trial court for a final and appealable order dismissing count V and also moved to voluntarily dismiss counts I through IV. At the hearing on the plaintiffs' motions on August 13, 1990, the plaintiffs' attorney agreed to dismiss the Illinois resident car dealerships with prejudice. The trial judge then entered an order permitting the voluntary dismissal of counts I through IV without prejudice and dismissed count V with prejudice. The sole issue before us is whether count V pleaded proper allegations to support a declaratory judgment.

The plaintiffs have filed a motion to strike the defendant's statement of facts and an appendix to the defendant's brief on the ground that they contain matters outside the record. They also moved to strike part of the defendant's brief on the ground that it constitutes an argument against class certification which, the plaintiffs contend, is not an issue.

On February 8, 1990, before the hearing on American Suzuki's motion to dismiss, Virginia Gallegos, one of the plaintiffs, filed a separate common law tort action in the law division of the circuit court of Cook County seeking to recover for the personal injury she had allegedly sustained in the same accident that formed the basis of her request for relief in count V of this action.

On June 26, 1990, before a final order had been entered in this case, another nationwide class action (*Connick* case) was filed against American Suzuki in the circuit court of Cook County on behalf of the same Pennsylvania and New Jersey plaintiffs who had voluntarily discontinued their actions in the multidistrict proceedings. They were represented by the same attorneys who had filed the earlier actions in the circuit court of Cook County. That action reasserted the claims that had been pending in the multidistrict proceedings and included claims virtually identical to counts I through IV of the complaint in the case before us. American Suzuki moved to consolidate that action with this action. After the case before us was dismissed, the plain-

tiffs, Heidi Gallegos, Natheree Marlow and Frank Forest, filed a petition for leave to intervene in the *Connick* case.

Two days after the complaint in this case was dismissed with prejudice, Vacountess Marlow, another plaintiff in count V, also filed a separate common law tort action in the law division of the circuit court of Cook County seeking to recover for the same alleged personal injuries that formed the basis of her request for declaratory relief in count V of this action. The plaintiffs ask us to strike any reference in the defendant's brief to the *Connick* class action and the common law actions brought by Virginia Gallegos and Vacountess Marlow. The defendant has asked us to take judicial notice of those other cases. We took the motions to strike with the case.

■ We disagree that the *Connick* action is outside the record in this case. It was referred to in the defendant's objections to the motion for voluntary dismissal. The Gallegos and Marlow individual tort actions, however, were not in the record. As a general rule, an appellate court will not take judicial notice of a record in another court unless it is incorporated in the proceedings before it. *Schwartz v. City of Chicago* (1974), 21 Ill. App. 3d 84, 315 N.E.2d 215.

In *Krebs v. Mini* (1977), 53 Ill. App. 3d 787, 368 N.E.2d 159, the plaintiffs filed a complaint for a temporary restraining order which included a prayer for a finding of the existence of a partnership or joint venture between the parties and for a declaration that a constructive trust existed. The appellate court pointed out that the plaintiffs had filed a complaint at law against the defendant containing the same allegations and raising all the issues raised by the petition for a temporary restraining order. The court held that on that basis alone the trial judge would not have abused his discretion if he determined that the pending action at law was a more appropriate forum for the resolution of the issues raised in what was tantamount to a request for a declaratory judgment. Unlike the *Krebs* case, the common law action of Virginia Gallegos, although pending at the time of the hearing in this case, was not called to the attention of the judge, and the common law action of Vacountess Marlow was filed after the complaint in this case had been dismissed. It thus appears that those actions have run afoul of the rule. In our judgment, however, those actions are subject to an exception to the rule.

In *Hazdra Homes, Inc. v. County of Du Page* (1975), 27 Ill. App. 3d 685, 326 N.E.2d 561, the plaintiff filed a complaint for a declaratory judgment seeking a declaration that a zoning ordinance was void as to the plaintiff's property. During oral argument the attention of the appellate court was called to the existence of two other lawsuits

involving the subject property which had been filed after the filing of the appeal. The appellate court held that one of the lawsuits was relevant to the case before it and, over objection, judicially noticed that case. The court held that the rule should not be applied "to produce absurd results or injustice." (27 Ill. App. 3d at 687.) Like the *Hazdra* court, we cannot ignore what is relevant and is now before us. Like the *Krebs* court, we believe that the common law actions are relevant on the question of whether the trial judge properly exercised her discretion, and we judicially notice them. The *Connick* class action concerns only counts I through IV, which are not in issue here. That case is not relevant, and we see no reason to take judicial notice of it, even though it is in the record. The motion to strike references to the *Connick* action is allowed; the motion to strike any reference to the common law actions brought by the plaintiffs is denied.

■ The defendant argues that count V is "in reality, a thinly disguised attempt to circumvent the statutory requirements for maintaining a class action." The plaintiffs have moved to strike that part of the defendant's brief and argue that the issue of class certification is not relevant to the question of whether a declaratory judgment may be entered here. We disagree. For reasons to be explained later, we conclude that whether this case may proceed as a class action is a question, to use the defendant's language in another context, "inextricably intertwined" with the question of whether the case may proceed as a declaratory judgment. In addition, we note that the plaintiffs themselves tell us that the "declaratory judgment action stands in the same position as the class action device." The motion to strike part of the defendant's brief is denied.

Before beginning an analysis of the complaint before us, it is appropriate to recognize some principles of law applicable to declaratory judgment actions. The granting or denying of declaratory relief rests within the sound discretion of the trial court, and the complaining party on appeal must show affirmatively an abuse of discretion. (*Charleston National Bank v. Muller* (1974), 16 Ill. App. 3d 380, 306 N.E.2d 358.) The declaratory judgment statute was not designed to supplant other remedies. (*Albright v. Phelan* (1971), 2 Ill. App. 3d 142, 276 N.E.2d 1.) The mere existence of another remedy does not require dismissal, but it may constitute sufficient grounds for a dismissal in the trial court's discretion. (*Krebs v. Mini* (1977), 53 Ill. App. 3d 787, 368 N.E.2d 159.) Declaratory judgment should not be granted unless the court can by such judgment dispose of the controversy between the parties. *Farmers Insurance Group v. Harris* (1972), 4 Ill. App. 3d 372, 279 N.E.2d 789.

Since the case was dismissed on motion, and it is our task to determine if the trial judge abused her discretion, we should attempt to examine the record, as best we can, through the eyes of the trial judge. To begin, she was confronted with a contradiction between the identity of the class and the declaration sought by the complaint. The plaintiffs are identified as individuals and as representatives of a class "who were injured during the operation of or while a passenger in a Suzuki Samurai automobile that rolled or flipped over or otherwise lost control *due to manufacturing or design defects in said vehicle.*" (Emphasis added.) Included in the "class allegations" of the complaint is the statement that the "central question in each class member's claim is whether the Suzuki Samurai has a common design or production defect *which causes them to suddenly and unintendedly roll over* when a driver attempts to avoid an accident, avoid an obstacle in the roadway, or makes any sudden maneuver of the vehicle under normal traffic conditions." (Emphasis added.) The complaint alleges that the plaintiffs, Vacountess Marlow and Virginia Gallegos, were operators of Suzuki Samurais which "became unstable and rolled over, *causing plaintiffs to be injured.*" (Emphasis added.) The complaint also alleges "[o]n information and belief, the above described common defects *have resulted in numerous auto accidents.*" (Emphasis added.)

It is clear that in the class allegations of the complaint the plaintiffs maintained that they and the members of their class were wrongfully injured because of the defect in the design of the Samurai vehicle. On the other hand, count V specifically recited that the plaintiffs were not "seeking a determination of liability" nor asking "for a determination of proximate cause" of the injuries suffered by the members of the class, including the plaintiffs.

It is inescapable that someone must determine from the class allegations that the plaintiffs were injured because of a defective design. For if the plaintiffs were not injured due to the defective design, they have no cause of action, and the class action must fall since the plaintiffs could not then properly represent the class. *Landesman v. General Motors Corp.* (1978), 72 Ill. 2d 44, 377 N.E.2d 813.

It is also inescapable that the obligation of making that determination devolves upon the judge. Regardless of whether the determination is to be made after a trial or at a certification hearing, the judge must decide a question of fact—causation—which the plaintiffs allege is to be decided by separate juries throughout the nation in actions brought by the individual class members. On that basis alone, we could uphold the trial judge's discretion in refusing to put herself in

the incongruous position of deciding a fact which could be contradictory to the finding of fact made by a jury subsequently.

■ There are other reasons for upholding the judge's exercise of discretion. The statute provides that the court shall refuse to enter a declaratory judgment if it appears that the judgment "would not terminate the controversy or some part thereof, giving rise to the proceeding." (Ill. Rev. Stat. 1989, ch. 110, par. 2—701.) The defendant argues that declaratory relief would not end the controversy because the issues of causation and damages would remain unresolved; the plaintiffs respond that the requirement of the act will be satisfied by a declaration concerning defective design which is "some part" of the controversy. Ill. Rev. Stat. 1989, ch. 110, par. 2—701(a).

The plaintiffs cite no cases in support of their position but rely solely on the language of the act itself. The application of the phrase "some part" has been described thus:

> "The phrase, 'or some part thereof,' in the Illinois statute recognizes the fact that litigation may be many-sided and the administration of justice is advanced if the narrowing and limiting conception of singleness implied in the categorical use of such terms as 'controversy' and 'transaction' is avoided. It is not intended by the phrase to permit piecemeal litigation. *** The phrase 'or some part thereof' is in harmony with other provisions of the Civil Practice Law which encourage joinder of claims and the disposition in one suit of as many existing disputes between the parties as is possible commensurate with the due and proper administration of justice." (Ill. Ann. Stat., ch. 110, par. 2—701, Historical & Practice Notes, at 13 (Smith-Hurd 1989).)

Our reading of that language leads to the conclusion that the phrase, "some part" of the controversy, does not mean an element of a single claim, but, rather, it means an entire claim which is part of more than one claim.

In *Krebs v. Mini* (1977), 53 Ill. App. 3d 787, 368 N.E.2d 159, previously discussed in another context, the plaintiffs filed an action for injunction and later an amendment which the appellate court construed to be a prayer for declaratory relief which sought a finding of the existence of a partnership or joint venture between the plaintiffs and the defendant. The plaintiffs had previously filed a complaint at law containing the same allegations and raising all the issues raised in their petition for a temporary restraining order. The appellate court upheld the dismissal of the claim for declaratory relief on the ground that any finding by the trial court that the parties were partners or

joint venturers would still leave the parties in litigation over such terms of the partnership agreement and whether or not there had been a breach of those terms. The court also held, as we do here, that the existence of another available remedy supported the exercise of the court's discretion in dismissing the complaint. We believe the reasoning of the appellate court in *Krebs* is applicable here.

Similarly, although an opinion of the Federal district court is not binding upon us, we find persuasive the reasoning of the district court in *Sarafin v. Sears, Roebuck & Co.* (N.D. Ill. 1978), 446 F. Supp. 611. In that case the plaintiff filed a *declaratory judgment complaint as a class action*. In dismissing the complaint, the district judge said this:

> "Plaintiff here is not attempting to settle a controversy before it ripens into a legal liability, nor is she trying to terminate litigation. *On the contrary, the declaratory relief she requests would operate as a prelude to or preparation for a myriad of individual damage claims.* Courts have declined to entertain actions for a declaratory judgment where the declaration would result in piecemeal litigation or would try particular issues without settling the entire controversy. [Citations.] It is not necessary to put the entire dispute to rest, but the issues must be separable so that an important and autonomous part of the controversy can be finalized." (Emphasis added.) (446 F. Supp. at 615.)

We conclude, therefore, that declaratory relief in this case would result in impermissible piecemeal litigation.

In addition, we fail to see why a declaratory judgment action may be maintained if brought in the guise of a class action but may not be maintained if brought as an individual complaint. The class should be entitled to no greater rights than the individual plaintiffs. Significantly, this case could have been dismissed against the individual plaintiffs because the declaration that the design of the Samurai was defective would not have ended the controversy and for the additional reason that there was another traditional remedy available as evidenced by the common law actions the plaintiffs filed. As previously noted, dismissal of the plaintiffs individually would require dismissal of the entire complaint on behalf of any class. *Landesman v. General Motors Corp.* (1978), 72 Ill. 2d 44, 377 N.E.2d 813.

The defendant has pointed out that the legal definition of product defect varies substantially from State to State. (See Birnbaum, *Unmasking the Test for Design Defect: From Negligence [to Warranty] to Strict Liability to Negligence*, 33 Vand. L. Rev. 593, 602-39 (1980).) It

has done so to support its argument that declaratory relief in this case would deprive both American Suzuki and the putative class members of due process.

Illinois courts generally rely upon the consumer-expectation test of section 402A of the Restatement of Torts. (Restatement (Second) of Torts §402A (1965); *Hunt v. Blasius* (1978), 74 Ill. 2d 203, 384 N.E.2d 368.) Some courts employ a strict risk-utility balancing test. (See, *e.g., Acord v. General Motors Corp.* (Tex. 1984), 669 S.W.2d 111.) Other States instruct juries to balance several enumerated factors. (*Rix v. General Motors Corp.* (1986), 222 Mont. 318, 723 P.2d 195.) Others provide the jury with a choice of tests to apply. (*Bernal v. Richard Wolf Medical Instruments Corp.* (1990), 221 Cal. App. 3d 1326, 272 Cal. Rptr. 41.) States also differ on evidence considered admissible to prove negligent or unreasonably dangerous design. For example, some courts will allow evidence of subsequent design changes for limited purposes. (See, *e.g., Collins v. Interroyal Corp.* (1984), 126 Ill. App. 3d 244, 466 N.E.2d 1191.) Others prohibit evidence of subsequent remedial measures in products liability actions. See, *e.g., Orkin Exterminating Co. v. Dawn Food Products* (1988), 186 Ga. App. 201, 366 S.E.2d 792.

The plaintiffs seek to minimize any problem created by the possibility that the claims of class members in other States may require resolution under substantive law which differs from that of Illinois. They argue that the judge could create a subclass for each such differing jurisdiction. In support the plaintiffs have cited *Miner v. Gillette Co.* (1981), 87 Ill. 2d 7, 428 N.E.2d 478, and *Martin v. Heinold Commodities, Inc.* (1987), 117 Ill. 2d 67, 510 N.E.2d 840.

In *Miner*, the principal issue was whether due process precluded an Illinois plaintiff from maintaining a multistate class action in Illinois. The plaintiffs, residents of Illinois, brought suit on behalf of a national class. The trial judge upheld the class action on behalf of all Illinois residents but denied it as to residents of other States. The supreme court held that there was no denial of due process if adequate notice was given to nonresidents and if the plaintiff provided adequate representation. The defendant also argued that there was no predominating question of law and that "the individual questions of law relating to each of the 50 States [was] the predominant focus of the action." (*Miner*, 87 Ill. 2d at 16.) The supreme court held that maintenance of a class action did not require a common question of *both* law and fact and that, since a common question of fact did exist, the issue was reduced to whether that common question of fact "predominat[ed] over the individual questions of law inherent in the appli-

cation of the laws of the 50 States." (87 Ill. 2d at 17.) The case was remanded to the circuit court to determine whether it would be feasible to subdivide the class. Resolution of the question was "dependent upon plaintiff's ability to establish that the differing laws of the States are subject to grouping in a manageable number of subclasses." 87 Ill. 2d at 18.

In *Martin* the trial judge granted the plaintiff's motion to certify the cause as a class action and subsequently granted the plaintiff's motion for partial summary judgment. The appellate court reversed partial summary judgment, citing *Miner*, but remanded the case to the trial court for the purpose of conducting a hearing to determine whether the common law in the States where nonresident class members resided was substantially similar to Illinois law or whether there were differing laws of the other States which were subject to grouping in a manageable number of subclasses. *Martin v. Heinold Commodities, Inc.* (1985), 139 Ill. App. 3d 1049, 487 N.E.2d 1098.

The supreme court affirmed the order of the appellate court reversing summary judgment but reversed the order remanding the case to the trial court for a new hearing on the question of certification. The court held that remand was unnecessary because the court concluded that the substantive law of Illinois could be applied to resolve the factual issues common to the entire class. The plaintiffs do not claim here that the substantive law of Illinois would be applicable to all claims made by nonresidents of Illinois.

■ The trial judge was not asked to and did not conduct a certification hearing in this case. Consequently, we are unable to determine from the record before us whether the creation of subclasses would lead to a denial of due process to the absent members of the class and, therefore, we refrain from ruling on the defendant's due process argument with respect to a conflict-of-laws problem. We observe, in passing, that in both *Miner* and *Martin* no issue was made of the defendant's standing to argue that the right to due process of nonresident *plaintiffs* would be violated by the maintenance of a multistate class action. We make that observation because the plaintiffs maintain here that the defendant has no standing to raise the argument that due process is denied to nonresident plaintiffs. Whether the defendant has such standing is not controlling. In passing on class certification it is the responsibility of the trial judge to insure that the due process rights of nonresident class members are protected.

Our abstention from passing on the due process aspect of any possible conflict-of-laws problem does not mean that we must ignore the difficulties facing a trial judge in resolving such a problem. It is cer-

tainly a factor to be considered by the judge in the exercise of discretion whether to entertain a declaratory judgment action. If the case proceeded with subclasses it would be the obligation of the plaintiffs, Illinois residents subject to Illinois law, to research the law in each State and to provide the court with appropriate jury instructions of the law governing defective designs for several subclasses. The court, of course, has its "own obligation to act as a guardian on behalf of the absent members of a class." (Ill. Ann. Stat., ch. 110, par. 2—803, Historical & Practice Notes, at 125 (Smith-Hurd 1983).) Therefore, the duty to properly instruct the jury may devolve upon the judge. The same judicial duty is applicable to the due process requirement of notice to absent members of the class.

The defendant has pointed out the ramifications of permitting the plaintiffs to proceed in this case. By way of illustration, the defendant maintains that a resident of Hawaii would be prevented from pursuing a claim against American Suzuki based on injuries sustained in his home State because the plaintiffs had failed to demonstrate that the Samurai was defective to the satisfaction of a jury in the circuit court of Cook County. The defendant also argues that the plaintiffs' failure or success would interfere with cases that may already be pending in other forums and would also affect the potential claims of persons who have not yet filed actions or sustained injuries. The defendant maintains that those who have not yet filed actions or sustained injuries could not possibly be provided with notice and the opportunity to reject the plaintiffs' proposed representation of their interests.

The plaintiffs respond that the absent members are given the procedural protection which includes an opportunity to "opt out" of the litigation by the reception of proper notice. That notice would allow class members to exercise their own discretion in deciding whether to allow the plaintiff class representatives to pursue litigation on their behalf.

The plaintiffs concede that due process requires that class members in this case be given individual notice. (*Cf. Eisen v. Carlisle & Jacquelin* (1974), 417 U.S. 156, 40 L. Ed. 2d 732, 94 S. Ct. 2140.) The plaintiffs, however, do not explain what form of notice would be made, who would pay for it, or how individual class members could be identified. We can understand that discovery procedures might ascertain the existence of those who had filed suit or had made claims against American Suzuki, but the identification of those who have suffered injury but have not yet made claims is quite another matter. Obviously, notice to all class members "who were injured during the operation of or while a passenger in a Suzuki Samurai automobile ***

due to manufacturing or design defects" in the Samurai would be, to understate, a monumental task. Therefore, the judge would be obligated not only to insure that the jury would be instructed properly, but to fashion an appropriate notice to the members of the class. To determine in one trial whether the Samurai vehicle was defectively designed is indeed a praiseworthy end, but not an end to be achieved by saddling a court and a jury with a procedural and substantive law nightmare.

■ We have discussed what a trial judge could perceive as detriments in the maintenance of a class action seeking an adjudication of but one element of a tort action. We now turn to the benefit claimed by the plaintiffs. They maintain that a declaratory judgment that the Samurai design was or was not defective would save precious judicial time and effort in the future in that it would remove that issue from all other tort actions between injured parties and American Suzuki. We suspect that the plaintiffs are overly sanguine. Still to be resolved by separate juries would be the troubling issues of causation and damages, if the verdict is for the plaintiffs. And if the verdict is for the defendant, we have grave doubts that the injured class members spread throughout the nation would supinely accept any judgment entered in the circuit court of Cook County in favor of American Suzuki's design. We also feel confident that the full faith and credit provision of the United States Constitution would be sorely tested as a vast number of judges throughout the land would examine such a judgment here with a microscopic eye to insure that the judgment was not acquired through collusion between American Suzuki and the plaintiffs, that the plaintiffs adequately represented the class and that notice met the strict requirements of due process. Finally, we note that the plaintiffs' concession that any declaration in this case would not be binding upon future persons injured as a result of the design defect considerably weakens the plaintiffs' claim that the declaration here would end the controversy insofar as the question of a design defect is concerned. We conclude, therefore, that the trial judge did not abuse her discretion in dismissing count V.

In view of our holding, it is unnecessary to consider the defendant's additional argument that the granting of declaratory relief in this case would be a violation of American Suzuki's constitutional right to trial by jury in that it would involve the use of separate juries in determining American Suzuki's liability.

■ The plaintiffs maintain that the declaratory judgment action stands in the same position as the class action device and the doctrine

of nonmutual offensive collateral estoppel, which they define as follows:

> "Non-mutual offensive collateral estoppel is a device by which plaintiffs can benefit from earlier findings against the defendants with whom they are now litigating, even though plaintiffs were not parties to the earlier suit or suits. Plaintiffs can estop the defendants from forcing the relitigation of issues on which the defendants were previously unsuccessful if the plaintiffs can show 1) that the issues in the two suits are identical and that the fact-finder in the earlier proceeding had to have found against defendants on that issue and 2) that defendants had a full and fair opportunity to contest the earlier decision."

Reduced to its essentials, the rule means that a finding against the defendant may collaterally estop the defendant from relitigating an issue in a case brought by another plaintiff, but that other plaintiff would not be collaterally estopped from relitigating an issue which has been decided in the defendant's favor. The principal cases upon which the plaintiffs rely are *Parklane Hosiery Co. v. Shore* (1979), 439 U.S. 322, 58 L. Ed. 2d 552, 99 S. Ct. 645, and *Ezagui v. Dow Chemical Corp.* (2d Cir. 1979), 598 F.2d 727. Whether the rule will be applied is subject to the trial court's discretion. *Parklane Hosiery*, 439 U.S. at 331, 58 L. Ed. 2d at 562, 99 S. Ct. at 651-52.

We are at a loss to see how the rule could be applicable here, or why the plaintiffs cite it, because the plaintiffs concede that in the case before us a finding in favor of the defendant would be *res judicata* as to all other members of the class. Moreover, there is authority against the application of the rule in this case.

In *Goodson v. McDonough Power Equipment, Inc.* (1983), 2 Ohio St. 3d 193, 443 N.E.2d 978, the supreme court of Ohio expressly held that nonmutual collateral estoppel may not be used to preclude the relitigation of the issue of defective design relating to mass-produced products when the injuries arise out of distinct underlying incidents. The court pointed out that the time the trial court must expend in deciding whether the identical issue was actually decided in the previous case offsets the time sought to be saved in the name of judicial economy. The court added the following observation:

> "The danger is multiplied in cases such as this one where the issue determined in the first litigation relates to a product's design. This is due to the nature of the questions and the potentially broad impact of the resolution. These questions are very technical, requiring expert testimony to bring out the specifics. Also, a jury's ultimate determination requires delicate balanc-

ing between the design decisions actually made by the manufacturer and those which are postulated as feasible within the industry at any given point in time. Thus, the determination made by a jury in any particular case will ofttimes not be free from doubt.

Just as the risk of an erroneous determination is increased by the complex nature of design issues, the potential impact of such a decision would be unfairly broadened by the offensive application of nonmutual collateral estoppel. *This could result in a single jury, sitting in review of certain limited facts, entering a verdict which would establish safety standards for a given product for the entire country. It would not be prudent to raise a decision made by one jury in the context of one set of facts to the standard under which all subsequent cases involving separate underlying factual circumstances are judged.* See, e.g., *Weinberger, Collateral Estoppel and the Mass Produced Product: A Proposal*, 15 New Eng. L. Rev. 1 (1979)." (Emphasis added.) 2 Ohio St. 3d at 203, 443 N.E.2d at 987.

The plaintiffs also argue that courts have already allowed class plaintiffs to benefit from the declaratory judgment act in complex court litigation and refer to *Gabel v. Hughes Air Corp.* (C.D. Cal. 1972), 350 F. Supp. 624, *aff'd in part & rev'd in part on other grounds* (9th Cir. 1973), 557 F.2d 759. We agree with the defendant that *Gabel* is not applicable here. *Gabel* involved one occurrence, the collision of two airplanes, in which 50 persons were killed. In upholding declaratory judgment, the district court emphasized that "[o]ne unitary set of facts will determine the cause of the crash and the extent of the liability therefore of the United States and of the carrier Air West and of the defendant [pilot]." (350 F. Supp. at 628.) In the case before us there is no "unitary set of facts" which will determine the cause of each of the separate injuries of the members of the class.

For all these reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

McNAMARA and LaPORTA, JJ., concur.