(No. 27933.—

MEYER ABRAMS *et al.*, Plaintiffs in Error, *vs.* LEO AWOTIN, Defendant in Error.

*Opinion filed Sept. 19, 1944—Rehearing denied Nov. 20, 1944.*

SHULMAN, SHULMAN & ABRAMS, (MEYER ABRAMS, of counsel,) all of Chicago, for plaintiffs in error.

HARRIS, REINHARDT & BEBB, (HERBERT BEBB, of counsel,) all of Chicago, for defendant in error.

Mr. JUSTICE WILSON delivered the opinion of the court:

In 1929, Leo Awotin brought an action in the circuit court of Cook county against the Atlas Exchange National Bank of Chicago to recover $35,000 as damages for the bank's failure to repurchase real estate mortgage bonds, conformably to its agreement made at the time of the sale. Judgment was rendered against Awotin upon a directed verdict. Desiring to prosecute an appeal, he retained Meyer Abrams, a member of the firm consisting of Max Shulman, Bernard Shulman and Abrams, practicing law under the name of Shulman, Shulman and Abrams, to represent him, and on June 11, 1931, entered into a written agreement with Abrams. By the agreement, Abrams agreed, so far as relevant, "to act as attorney and to do and perform all necessary services in connection with the foregoing appeal to its final determination and to do and perform all other services until all remedies to recover for the party of the first part [Awotin] will be exhausted." Upon appeal, the Appellate Court for the First District reversed the judgment and remanded the cause generally and without spe-

cific directions. (*Awotin* v. *Atlas Exchange Nat. Bank,* 265 Ill. App. 238.) A new trial, pursuant to the remandment, resulted April 15, 1932, in a judgment for $39,841.66 in Awotin's favor. An attempted appeal was not perfected. This court, on December 22, 1933, decided that a bank's agreement to repurchase at a specified price real estate mortgage bonds sold by it was void as against the public policy of the State and section 4 of the act of 1879 for the protection of bank depositors. (*Knass* v. *Madison and Kedzie State Bank,* 354 Ill. 554.) Six days later, on December 28, 1933, the Atlas bank sued out a writ of error to reverse the judgment of April 15, 1932. A review of the record resulted in a reversal of the judgment rendered in Awotin's favor. (*Awotin* v. *Atlas Exchange Nat. Bank,* 275 Ill. App. 530.) Upon *certiorari,* Awotin being represented by counsel other than Abrams, the Supreme Court of the United States affirmed the judgment of the Appellate Court. *Awotin* v. *Atlas Exchange Nat. Bank,* 295 U. S. 209.

Subsequently, Awotin instituted an action in the superior court of Cook county against Meyer Abrams, Bernard Shulman, Jennie L. and Bernard Shulman, as executors of the will of Max Shulman, deceased, to recover damages (1) for the alleged failure of the attorneys, in accordance with the written contract, to consummate a settlement in the amount of $35,000 offered by the liquidator of the Atlas bank and (2), fees, interest, costs and expenses necessarily incurred in the employment of additional counsel to represent him in Federal and United States Supreme Court litigation. Abrams and his codefendants answered the complaint and, in addition, filed a counterclaim which, as amended, alleged, among other things, that Rose Kimen, Awotin's housekeeper, also purchased bonds from the Atlas Exchange National Bank under a similar repurchase agreement; that an action was instituted in her name to recover damages; that, during the course of the trial in the *Kimen*

*case,* it developed a new bank had succeeded to the assets of the Atlas bank, necessitating equity proceedings in the United States District Court to establish liability of the successor bank; that this involved many complications and was not a part of the agreement entered into at the time of their employment by Awotin; that, accordingly, they (Awotin and the attorneys) orally agreed, in the event Rose Kimen obtained a judgment first, that is, before Awotin, a suit in equity would be filed in her name, as a judgment creditor, against the successor bank and other parties, and, upon entry of judgment in favor of Awotin, the latter would be joined as a party plaintiff, and that they also orally agreed Awotin would pay, in addition to all costs, a fair and reasonable fee for the services to be rendered in the prosecution of the equity proceeding. For the services so rendered, $3500 was claimed to be a fair and reasonable fee. Counterclaimants, having received $100, sought to recover the balance of $3400. Replying to the counterclaim, Awotin denied the existence of an oral contract and averred that the services for which the additional fees were claimed were rendered pursuant to the provisions of the written agreement of June 11, 1931. A motion to strike Awotin's fourth amended complaint was sustained, he elected to abide by the pleading, and his complaint was dismissed. The Appellate Court affirmed the judgment of dismissal. (*Awotin v. Abrams,* 309 Ill. App. 421.) It is to be observed that the counterclaim was in no way involved in this last-mentioned appeal. Petition for leave to appeal to this court was denied. Upon affirmance by the Appellate Court of the judgment dismissing Awotin's complaint (309 Ill. App. 421,) the cause was redocketed in the superior court for disposition of the counterclaim and the answer thereto. A jury returned a verdict of $2200 in favor of counterclaimants and against Awotin. At this juncture, the court changed the name of the case to "Meyer Abrams et al, plaintiffs, v. Leo Awotin, defend-

ant." For convenience, we adopt this designation of the parties and hereafter the attorneys will be referred to as plaintiffs and Awotin as defendant. Plaintiffs' motion for judgment notwithstanding the verdict was allowed and judgment for $3400, the full amount sought by the counterclaim, was rendered in their favor and against defendant. Upon appeal, the Appellate Court reversed this judgment, deciding that the oral agreement was without consideration and void, and "since no recovery can be had," the cause was not remanded. (*Awotin* v. *Abrams,* 321 Ill. App. 304.) Plaintiffs prosecute a writ of error to review the record.

Defendant has filed a motion to dismiss the writ of error upon the grounds (1) that the action of the Appellate Court in reversing without remanding did not involve a constitutional question, (2) that plaintiffs did not direct their alleged constitutional questions to the attention of the court and (3) that the only method of review open to plaintiffs is by petition for leave to appeal, pursuant to section 75 of the Civil Practice Act. (Ill. Rev. Stat. 1943, chap. 110, par. 199.) Plaintiffs, on the other hand, maintain that they raised the question of the jurisdiction of the Appellate Court to reverse without remanding in their petition for rehearing, and that the judgment of reversal without remandment violates the due-process clauses of both the Federal and State constitutions and section 5 of article II of our constitution. Their petition for rehearing in the Appellate Court asserts: "The question of the amount of the consideration is not a legal question but a factual question on which the jury passed, and this Court is without jurisdiction to reverse without remandment on factual questions." To give the Supreme Court jurisdiction to review a judgment of the Appellate Court upon writ of error, under section 11 of article VI of our constitution, a constitutional question must not only be involved but the question must have arisen in the Appellate

Court for the first time. (*Merlo* v. *Public Service Co. of Northern Illinois*, 381 Ill. 300; *Goodrich* v. *Sprague*, 376 Ill. 80; *Corcoran* v. *City of Chicago*, 373 Ill. 567; *Cuneo* v. *City of Chicago*, 372 Ill. 473.) And, where a constitutional question is first raised in the Appellate Court, that tribunal has authority to pass upon the question. (*Ortseifen* v. *City of Chicago*, 386 Ill. 133; *Corcoran* v. *City of Chicago*, 373 Ill. 567.) Accordingly, we must determine from the record whether the action of the Appellate Court did involve a construction of Federal and State constitutional guaranties.

The gist of the quotation from the petition for rehearing and of repeated assertions in plaintiffs' counter-suggestions to the motion to dismiss and in their briefs is that the sufficiency of the consideration for the oral agreement was a factual question. The insuperable difficulty with these statements is that no question of the sufficiency or amount of the consideration is involved in the judgment of the Appellate Court. It may be conceded that the amount or sufficiency of consideration is a question of fact. The question of whether there is consideration, or, conversely, no consideration, for an agreement, is, however, a question of law. An examination of the opinion of the Appellate Court discloses it decided (1) that the evidence was sufficient to prove an oral contract covering the services rendered in the Federal court; (2) that, since this agreement was entered into during the existence of the relationship of attorney and client, the contract was presumptively fraudulent, thereby casting upon plaintiffs the burden of affirmatively showing the utmost good faith and the absence of undue influence, but that plaintiffs, and in particular, Abrams, did not bring themselves within this rule of law, and (3) that, in any event, the written contract of June 11, 1931, covered the services so performed and, consequently, there was no consideration for the supplementary oral agreement to pay additional remuneration

48

for such services.  In short, the controlling basis of decision, irrespective of other comment in the opinion, was the absence of consideration for the oral contract.

Plaintiffs' contention that the judgment of the Appellate Court denied them due process of law in contravention of the Federal and State constitutions is predicated upon the erroneous premise that the reversal was upon factual questions.  They maintain that the Appellate Court decided, upon the previous appeal between the same parties (309 Ill. App. 421,) that the services performed by Abrams for defendant and Rose Kimen in the Federal court were not involved in the written agreement of June 11, 1931, and "This was the law in the case on the second appeal which was binding on the Appellate Court."  To sustain their argument that the claimed refusal to follow "the law in the case" denied them due process, plaintiffs rely largely upon the following language from the opinion of the Appellate Court in *Awotin* v. *Abrams,* 309 Ill. App. 421: "The contract here attached does not obligate defendants [the attorneys] to render legal service in connection with any settlement that may arise nor does it require them to perform services for Kimen and the plaintiff [Awotin] in the Federal court."  Plaintiffs contend that the issue as to whether the services rendered incident to the Federal proceedings were contemplated or embraced in the written agreement was thus squarely raised and decided upon the former appeal.  The first appeal involved defendant's claim against Abrams for his failure to settle the bank-repurchase case.  Any comment by the Appellate Court in its earlier opinion with respect to whether the written contract of June 11, 1931, covered the services rendered in the Federal courts would be merely *dictum*.  We recur to our observation in *Boddiker* v. *McPartlin,* 379 Ill. 567: "A court may not speak authoritatively upon questions not involved in the litigation.  This restrictive principle is

salutary, for expressions of opinion upon extraneous matters must necessarily lack binding force." The present opinion of the Appellate Court (321 Ill. App. 304) expressly declares that the language invoked by plaintiffs was *dictum:* "But we are further of opinion that under the terms of the written contract, Abrams was required to perform all the services he rendered and that this question was not decided by us in the former appeal (as was the contention of Mr. Abrams) and which was sustained by the trial judge in instructing the jury. There may be some language in the opinion, which if considered alone might sustain the instruction of the trial court, but we think it appears that the basis of our decision was that the allegations were but conclusions and that since the repurchase agreement was held void by our Supreme Court in the *Knass case,* 354 Ill. 554, no recovery could be had by Awotin and Abrams was required to perform no further services. We there said, speaking of the allegations of Awotin's fourth amended complaint: 'At any rate, the allegations as to this settlement were mere conclusions, which, stripped of verbiage, do not convince. After the decision in the *Knass case,* we hold there was no further obligation on defendants to render further legal services under the contract as made.' " Even had there been an adjudication as to whether the written agreement covered the services in the Federal court, a failure to follow the earlier decision would be but an error of law, and not a denial of due process presenting a constitutional question entitling plaintiffs to a further review upon writ of error in this court.

Plaintiffs were accorded an orderly hearing in the Appellate Court. The due-process clause is not a guaranty against erroneous decisions by courts having jurisdiction of the subject matter and of the parties. (*Cummings-Landau Laundry Machine Co.* v. *Koplin,* 386 Ill. 368;

*Baumgardner* v. *Boyer,* 384 Ill. 584.) As pointedly stated in *Merlo* v. *Public Service Co. of Northern Illinois,* 381 Ill. 300: "The constitutional requirement of due process of law is not a guaranty that the courts shall not commit error in the trial of causes or a guaranty against erroneous and unjust decisions by courts which have jurisdiction of the parties and the subject matter. If errors are committed, or erroneous and unjust decisions are rendered, they may be corrected in the manner provided by law for the correction of such errors. A mere error in entering a judgment or decree does not deprive the losing party of the benefit of due process of law."

Plaintiffs also insist that the judgment of the Appellate Court deprived them of a trial by jury, in violation of section 5 of article II of our constitution. This contention is likewise based upon the premise that the reversal without remandment was on factual grounds. Plaintiffs say, "In determining that there was no consideration on the ground of the failure of the burden of proof the court deprived the plaintiffs of their trial by jury," at the same time admitting, "There was no ambiguity in the written agreement." Plaintiffs' statement that, "The ground upon which the judgment was reversed without remandment, was the alleged failure of the plaintiffs to affirmatively show that the oral contract for the extra compensation was entered into with the utmost good faith and without undue influence," is a manifestly incorrect interpretation of the opinion of the Appellate Court. Moreover, defendant did not challenge the good faith of plaintiffs and this issue was not presented for decision. Defendant resisted plaintiffs' claim by denying that he made an oral contract as charged, and, further, that the so-called Federal services were performed pursuant to the written agreement. The decision that plaintiffs were not entitled to recover from defendant was not based on factual issues, as the former insist, but, instead, upon the construction of the written agreement,

an issue made by the pleadings, namely, whether Abrams was "required to perform all services until all remedies to recover were exhausted." We are not here concerned with the correctness of the conclusion of the Appellate Court that the oral agreement to pay him additional remuneration for services in the Federal court was without consideration and void. It suffices to observe that the decision was upon a question of law and did not involve a question of fact for determination by a jury. This being so, no question of invasion of plaintiffs' right to a trial by jury is before us.

The substance of the attack on the judgment of the Appellate Court is that its enforcement will deprive plaintiffs of their constitutional rights of trial by jury and due process of law. These issues present the question merely of the validity of the judgment and not constitutional questions. (*Merlo* v. *Public Service Co. of Northern Illinois,* 381 Ill. 300.) The issue here is not the constitutional question of the Appellate Court's jurisdiction to hear a cause but is, instead, the question whether a particular judgment rendered in a cause where jurisdiction of the subject matter and of the parties is admittedly present denied the unsuccessful litigants due process and a jury trial in contravention of constitutional safeguards. It follows that neither plaintiffs' petition for rehearing in the Appellate Court nor their present attack against its judgment present any constitutional question of its jurisdiction to render the judgment assailed.

Defendant's motion to dismiss the writ of error, taken with the case, must be allowed, and the writ of error is dismissed.

*Writ of error dismissed.*