OGNJEN MIMICA, Plaintiff-Appellee, v. AREA INTERSTATE TRUCK-
ING, INC., Defendant-Appellant.

First District (5th Division)   No. 1—92—2508

Opinion filed July 30, 1993.

Fagel & Haber, of Chicago (Steven J. Teplinsky and Alvin D. Meyers, of counsel), for appellant.

Greenberger, Krauss & Tenenbaum, Chartered, of Chicago, for appellee.

JUSTICE McNULTY delivered the opinion of the court:

Plaintiff Ognjen Mimica brought an action for monetary, declaratory and injunctive relief concerning the invention of a device called the Quality Control Carrier (QCC). The action challenged the validity of plaintiff's assignment to defendant of his rights in the patent application for the QCC. The court granted plaintiff's motion for declaratory judgment. This appeal is taken pursuant to Supreme Court Rule 304(a). (134 Ill. 2d R. 304(a).) At issue is the propriety of the granting of declaratory judgment.

In the late summer of 1990, plaintiff invented a new kind of truck trailer which improves the safety and efficiency of transporting steel coils. At the time of the invention plaintiff was employed by defendant Area Interstate Trucking, Inc. (AIT), as general manager. AIT is in the business of transporting metal products. AIT recommended a law firm, Fitch, Even, Tabin & Flannery (Fitch Even) to prepare a patent application. On May 24, 1991, Fitch Even prepared and filed in Mimica's name a declaration for patent application with the United States Patent and Trademark Office. The application listed Mimica as the sole inventor of the QCC. A prototype of the QCC was developed at AIT's expense. AIT's patent attorney prepared a patent application for the QCC. AIT paid for the preparation of the patent application. AIT employees participated in building the prototype.

On June 6, 1991, AIT's president and principal shareholder, Richard Dickson, requested plaintiff to come to a meeting at Dickson's office in Homewood, Illinois. At that meeting the other AIT shareholders, Kelly and Trainer, were also present. During the meeting Dickson accused plaintiff of not being a "team player" and of disloyalty. Dickson demanded that all rights in the QCC be owned by AIT because its development was a team effort and Dickson demanded that plaintiff sign any documents necessary to accomplish the ownership transfer. Dickson made it clear to Mimica that unless he signed the documents he would not remain part of "the team." Dickson does not dispute that he threatened to terminate Mimica. Mimica asked for time to think about the matter. A meeting was scheduled for 7 a.m. the next morning. That evening Mimica called Dickson and they met at a restaurant in Tinley Park, Illinois, where Mimica

agreed to assign all his rights in the Mimica application to AIT. On June 19, 1991, Dickson asked Mimica to come to his office to sign some documents. Dickson presented Mimica with a document entitled "Assignment" which purported to assign all of Mimica's rights in the Mimica patent application to AIT. Mimica signed the assignment but testified that he did so because he feared he would be fired if he refused. Later that day Mimica retained outside legal counsel, who wrote Dickson a letter declaring the assignment void. On July 1, 1991, Dickson terminated Mimica based upon Dickson's determination that the letter received from plaintiff's attorney declaring the assignment void illustrated that Mimica was not a team player.

On July 15, 1991, Mimica filed a verified complaint seeking injunctive relief, declaratory relief (including a declaration that plaintiff was entitled to all right and title in the patent application), and money damages. On October 29, 1991, the trial court granted plaintiff's motion for declaratory judgment and ordered that "Plaintiff's assignment signed on June 19, 1991, which purportedly assigned his rights to the QCC, is null and void. Thus, Plaintiff Ognjen Mimica is the sole owner of all past, present and future rights of patent number 07/705,555 (the number of the QCC)." However, the court also granted AIT shop rights to the invention because the invention was developed and perfected in the employer's plant with its time, materials and appliances, and wholly at its expense. See *Grip Nut Co. v. Sharp* (7th Cir. 1945), 150 F.2d 192, 196-97.

Defendant's appeal asks this court to reverse the parts of the order of October 28, 1991, declaring that the assignment of June 19, 1991, was null and void and declaring that plaintiff was the sole owner of all past, present and future rights of patent in the QCC without disturbing that part of the order which grants defendant shop rights in the invention. Plaintiff contends that defendant's notice of appeal is defective. A notice of appeal gives a reviewing court jurisdiction over only the judgments or parts thereof specified in the notice of appeal. (*Mydra v. Coronet Insurance Co.* (1991), 221 Ill. App. 3d 482, 492, 582 N.E.2d 274, 280.) When an appeal is taken from a specified judgment only, or from a part of a specified judgment, the court of review acquires no jurisdiction to review other judgments or parts thereof not so specified or not fairly to be inferred from the notice as intended for review on appeal. (*Mydra*, 221 Ill. App. 3d at 492.) We find that the arguments raised in defendant's brief are not so inconsistent with the relief requested in the notice of appeal as to constitute a substantive defect in the notice of appeal. The appeal raises two issues: (1) whether the motion for declaratory judgment

failed to meet the statutory requirements (Ill. Rev. Stat. 1991, ch. 110, par. 2–701 (now 735 ILCS 5/2–701 (West 1992))); and (2) whether defendant is entitled to a jury trial on the merits of plaintiff's request for a declaration of rights in the ownership of the patent application.

■ The general guidelines for determining whether the entry of a declaratory judgment is authorized are clear. There must be an actual controversy and it must appear that the judgment or order would terminate the controversy or some part of the dispute giving rise to the proceeding. (Ill. Rev. Stat. 1991, ch. 110, par. 2–701 (now 735 ILCS 5/2–701 (West 1992)).) The granting or denying of declaratory relief rests within the sound discretion of the trial court, and the complaining party on appeal must show affirmatively an abuse of discretion. (*Marlow v. American Suzuki Motor Corp.* (1991), 222 Ill. App. 3d 722, 584 N.E.2d 345.) The statute authorizing courts to enter declaratory judgments does not prescribe any particular form of prayer for the entry of such a judgment, and further provides that a declaratory judgment may be sought as an incident to or part of a pleading seeking other relief. *Krebs v. Mini* (1977), 53 Ill. App. 3d 787, 791, 368 N.E.2d 159, 162-63.

Defendant denies that the actual controversy requirement is satisfied here. It contends that the underlying facts and issues were premature. Its reliance, however, on *Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 362 N.E.2d 298, is misplaced. That case makes it clear that an actual controversy exists where a plaintiff alleges injury or a threat of injury to itself. (*Underground Contractors*, 66 Ill. 2d at 375.) A wrong need not have been committed. Nor is it necessary that an injury have been inflicted. Rather, the case must only present a "concrete dispute admitting of an immediate and definitive determination of the parties' rights." (*Underground Contractors*, 66 Ill. 2d at 375.) Moreover, "the party seeking relief must possess a personal claim, status, or right which is capable of being affected." (*Underground Contractors*, 66 Ill. 2d at 376.) In *Underground Contractors* the actual controversy requirement was not satisfied. There a trade association sought to have declared invalid certain bidding procedures intended to encourage the hiring of minorities by firms which bid on public works projects. The association was not a contractor and did not compete for public works contracts. Therefore the trade association was not in a position to allege the threat of injury to itself required to present an actual controversy. In contrast, here, the plaintiff alleges the threat of injury to his personal pecuniary interests in the patent application. If the assignment

in question was found to be valid, then the plaintiff would lose all rights in the patent application.

In an effort to show the absence of an actual controversy, defendant speculates as to what would happen should the United States Patent Office refuse to issue a patent on the QCC. It maintains that in that event "all of the litigation *** will be for naught. The Court will have declared Plaintiff to be the sole owner of the rights to nothing. That is exactly what the 'actual controversy' requirement seeks to prevent." Our review of the cases persuades us that that is not what the actual controversy requirement seeks to prevent. Defendant's speculation ignores the fact that the actual controversy requirement is satisfied by a threat of injury alone. No actual injury need be incurred. Moreover, defendant's assertion that the declaratory relief may entitle plaintiff to "the rights to nothing" belies the aggressiveness with which it contests this relief.

*Stone v. Omnicom Cable Television of Illinois, Inc.* (1985), 131 Ill. App. 3d 210, 475 N.E.2d 223, sheds further light on the proper application of the actual controversy requirement. There the court stated that "the condition of justiciability is satisfied where the mere existence of a claim, assertion or challenge to the plaintiff's legal interests portends the ripening seeds of litigation and casts doubt, insecurity and uncertainty upon the plaintiff's rights or status, thereby damaging the plaintiff's pecuniary or material interests." (*Stone*, 131 Ill. App. 3d at 214.) In *Stone* there was an actual controversy. The city used eminent domain in regard to statutes authorizing installation of a cable television system on plaintiff's land. Defendant franchisee entered onto plaintiff's land. The statutes presented a challenge to plaintiff's protected legal interest in view of the continuing trespass and the likelihood of defendant's reliance on those statutes. The instant case is analogous in the sense that defendant directly challenges plaintiff's legal interests in the patent application. Defendant claims that the agreement signed by plaintiff under threat of termination is a valid assignment of plaintiff's rights in his patent application. Such a claim gives rise to an actual controversy.

Defendant also maintains that the requirement that the declaratory judgment terminate the controversy or some part thereof is not satisfied here. In asking this court to reverse the trial court, defendant cites two cases: *Marlow v. American Suzuki Motor Corp.* (1991), 222 Ill. App. 3d 722, 584 N.E.2d 345, and *Krebs v. Mini* (1977), 53 Ill. App. 3d 787, 368 N.E.2d 159. Both of these are cases where the appellate court *upheld* the trial courts where, in the exercise of their discretion, they dismissed prayers for declaratory relief.

The courts upholding those dismissals did not decide that they were required as a matter of law but, rather, only that the dismissals did not constitute an abuse of discretion. The complaints were dismissed because the declaratory relief would not have finalized "an important and autonomous part of the controversy" but rather would have resulted "in impermissible piecemeal litigation." (*Marlow*, 222 Ill. App. 3d at 731.) For example, in *Marlow*, if the trial court had found that the parties were partners, the finding would have left the parties in litigation over the terms of the partnership agreement and whether or not there had been a breach of those terms. *Marlow*, 222 Ill. App. 3d at 730-31.

Contrary to defendant's theory, the trial court's granting of declaratory judgment has not left the parties in an analogous situation. Rather, that judgment terminated an autonomous controversy. It finalized any question as to the validity of plaintiff's assignment signed on June 19, 1991, which purportedly assigned his rights to the QCC to AIT and, therefore, it resolved the question of ownership of all past, present and future rights in the patent application.

■ Defendant also argues that the trial court improperly entered declaratory judgment even though the matter "was not properly before the court and there was no opportunity to be heard." Purporting to support this contention defendant cites two cases: *Kahle v. John Deere Co.* (1984), 104 Ill. 2d 302, 472 N.E.2d 787, and *Inter-Insurance Exchange of the Chicago Motor Club v. State Farm Insurance Co.* (1983), 113 Ill. App. 3d 157, 446 N.E.2d 1224.

*Kahle* held that the voluntary dismissal of a case under section 2—1009 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—1009 (now 735 ILCS 5/2—1009 (West 1992))) was a final order appealable by defendant. That case also held that a trial or hearing had not begun and that therefore the dismissal was without prejudice. While defendant correctly observes that *Kahle* describes a hearing as both "the equitable equivalent of a trial" and "a *** proceeding in which evidence is taken," it does not clarify how this observation aids it in the present case. *Kahle*, 104 Ill. 2d at 309.

Defendant relies on *Inter-Insurance* for the proposition that, as defendant states in its brief: "A Court's Order must be interpreted in the context of the motions that accompany them." In that case the parties disagreed as to whether a particular issue had been before the trial court. The appellate court decided this question by considering what the parties had sought in their various motions, how the trial court characterized those motions, and what objections (if any) to

those motions the parties made. *Inter-Insurance*, 113 Ill. App. 3d at 163.

Under *Inter-Insurance*, when a party objects to opposing counsel's characterization of the motion before the court, such an objection raises a doubt as to what is actually before the court. But even if the motion for preliminary injunction was properly before the court rather than the motion for declaratory judgment, any error made was harmless rather than prejudicial. Defendant had ample notice and opportunity to be heard.

Mimica filed his motion for declaratory judgment requesting a declaration of rights on July 29, 1991, and the motion was first called for hearing on July 31, 1991. On that date both sides presented oral argument on the motion. The court declined to rule on that date and continued the motion for declaratory judgment until September 3, 1991, at the same time as plaintiff's motion for preliminary injunction was set for hearing. While the court did not indicate that it would necessarily rule on the motion for declaratory judgment after the hearing which began on September 3, 1991, it clearly reserved the right to do so and told counsel that in any event there would be only one hearing on both motions. Responding to the arguments of counsel concerning whether the court should rule on the motion for declaratory judgment on September 3, 1991, the court stated, "Well, we will see what happens that day. I am not going to do it twice."

On September 3, 1991, plaintiff presented evidence at the hearing and filed a brief in support of the motion for declaratory judgment as well as his motion for preliminary injunction. Defendant had an opportunity to do the same as it was at all times in possession of all evidence relevant to the issue of what consideration plaintiff received in exchange for the assignment of his patent application rights.

It was not until September 12, 1991, after the close of plaintiff's case that defense counsel objected to the court's ruling on the motion for declaratory judgment. The only objection expressed by counsel was that the court had not set a briefing schedule on that motion. It did not request or indicate the need for a second evidentiary hearing on the motion for declaratory judgment.

On that date also both sides filed lengthy trial memoranda which fully briefed the issue raised by plaintiff's motion for declaratory judgment. Further, defendant's trial memorandum filed September 3, 1991, in opposition to plaintiff's motion for preliminary injunction fully briefed the issue of adequacy of consideration, which was the central issue raised by plaintiff's motion for declaratory judgment. Defendant argued in its trial memorandum that continuing employ-

ment for just 12 days past the threat of termination was sufficient consideration to support the assignment of the patent application.

Upon hearing the testimony of plaintiff and Mr. Dickson, defendant's president, the trial court correctly determined that there was no material factual dispute between the parties as to what plaintiff received from AIT, or did not receive, in exchange for the assignment of his patent application. The court responded by issuing a declaration of rights by order entered October 28, 1991, that the assignment was void, and that the consideration of 12 days' additional employment shocked the conscience and was, in fact, no consideration at all.

Neither defendant's motion to vacate that order, its supporting memorandum of law, nor its brief or argument before this court introduces any new arguments or identifies any new evidence beyond that which was made or introduced by defendant prior to the trial court's ruling on October 28, 1991.

Defendant was provided with ample opportunity to produce evidence that no duress existed or to show that adequate consideration was given for plaintiff's assignment of the patent application to defendant. Despite its oral and written opportunities, it did not succeed.

The trial court properly used declaratory judgment to resolve on an expeditious basis an urgent and actual controversy between the parties concerning the ownership of a pending patent application and the existence of shop rights. The declaratory judgment remedy should be liberally applied and not restricted by unduly technical interpretations. *Kluk v. Lang* (1988), 125 Ill. 2d 306, 531 N.E.2d 790.

*Chicago Division of the Illinois Education Association v. Board of Education* (1966), 76 Ill. App. 2d 456, 222 N.E.2d 243, is illustrative of the proposition that there are few procedural constraints on courts regarding the issuance of declaratory relief. That court affirmed in part the declaratory relief granted below in an "Opinion and Decree." The court responded to the defendant's questions as to the enforceability of the decree by stating that "[t]he court considered the pleadings, affidavits and exhibits and obviously decided that no material dispute existed as to the facts and that, therefore, there was no triable issue of fact. The court was within its equity powers in its attempt to give summary and complete relief in this case and dispose of the principal issues on such equitable terms as the court deemed required ***." (*Chicago Division*, 76 Ill. App. 2d at 473.) The court stated that "there is no technical form prescribed for the declaration of rights; it is sufficient if the rights may be ascertained therefrom in connection with the findings of court or jury in view of the contro-

versy presented." (*Chicago Division*, 76 Ill. App. 2d at 474.) Our review of the record persuades us that the trial court treated this case similarly.

The cases of *Bituminous Casualty Co. v. Fulkerson* (1991), 212 Ill. App. 3d 556, 571 N.E.2d 256, and *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24, cited by defendant underscore the rule that declaratory judgments are not to be used as a vehicle for prematurely determining disputed factual issues that are crucial to an underlying suit. That rule is satisfied here. The trial court perceived and the record reveals that there were no material facts in dispute. It is not disputed that on June 19, 1991, under threat of termination plaintiff signed an assignment of all of his rights in the patent application he had filed to his employer. It is not disputed that plaintiff was never paid anything for that assignment other than an illusory promise. (Mr. Dickson testified that had plaintiff not protested the assignment, he would have enjoyed the benefits of future career opportunities with AIT. However, since his employee-at-will status never changed, all of those opportunities were within Mr. Dickson's control.) Nor is it disputed that on July 1, 1991, shortly after having spoken with legal counsel who challenged the validity of the assignment by letter to his employer, AIT, plaintiff was fired by Mr. Dickson.

If defendant withheld evidence or argument because it believed that the court could not issue a declaration of rights in this case without a jury trial, it was mistaken. Count II of plaintiff's complaint, which contains the prayer for declaratory relief, is equitable in nature because it asks the court to declare that plaintiff's assignment of the patent application to defendant is void as a matter of law. A suit to have a contract declared void is a suit in equity, not law. At issue was whether the consideration received by plaintiff was adequate to support the purported assignment of his patent application to defendant on June 19, 1991. Whether consideration is legally adequate to support a contract is a question of law for the court to decide, not a question of fact for the jury. *Abrams v. Awotin* (1944), 388 Ill. 42, 57 N.E.2d 464; *Russell v. Jim Russell Supply, Inc.* (1990), 200 Ill. App. 3d 855, 558 N.E.2d 115.

Where the amount of the consideration which passed is not only so grossly inadequate as to shock the conscience of the court, but also accompanied by circumstances of unfairness, the court is in a position to set aside the transaction. (*O'Neill v. De Laney* (1980), 92 Ill. App. 3d 292, 297, 415 N.E.2d 1260, 1265; *Bonner v. Westbound Records, Inc.* (1979), 76 Ill. App. 3d 736, 394 N.E.2d 1303; *Zempel v. Hughes*

(1908), 235 Ill. 424, 85 N.E. 641.) Where the inadequacy is great, the circumstances of unfairness need only be slight to cause this court to set aside the transaction. (*Levy v. Broadway-Carmen Building Corp.* (1937), 366 Ill. 279, 285, 8 N.E.2d 675.) Here, where valuable economic rights were exchanged for an illusory promise, we find the amount of consideration so grossly inadequate as to amount to none at all. Moreover, the alleged consideration was accompanied by circumstances of unfairness. Where the parties to a transaction are in an employer/employee relationship, as in the case here, an assumption arises that the employer has superior bargaining power. (*Steger v. Lappin* (1970), 119 Ill. App. 2d 146, 150, 255 N.E.2d 87, 89.) The employer here took undue advantage of that superior bargaining power. Dickson's threat of termination substantially impaired plaintiff's exercise of free will in the execution of the assignment and the court properly determined that the assignment was void for lack of consideration.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

MURRAY and COUSINS, JJ., concur.