# Illinois Official Reports

## Supreme Court

---

**The Carle Foundation v. Cunningham Township, 2017 IL 120427**

---

| | |
|---|---|
| Caption in Supreme Court: | THE CARLE FOUNDATION *et al.*, Appellants, v. CUNNINGHAM TOWNSHIP *et al.*, Appellees. |
| Docket Nos. | 120427, 120433 cons. |
| Filed | March 23, 2017 |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of Champaign County, the Hon. Charles McRae Leonhard, Judge, presiding. |
| Judgment | Appellate court judgment vacated. Cause remanded. |
| Counsel on Appeal | Steven F. Pflaum, of Neal Gerber & Eisenberg, LLP, and Amy G. Doehring and Lisa Haidostian, of McDermott, Will & Emery, LLP, both of Chicago, and William J. Brinkmann, of Thomas Mamer & Haughey, LLP, of Champaign, for appellant The Carle Foundation. |
| | Lisa Madigan, Attorney General, of Springfield (David L. Franklin and Carolyn Shapiro, Solicitors General, and Carl J. Elitz, Assistant Attorney General, of Chicago, of counsel), for other appellants. |
| | Frederic M. Grosser, of Champaign, for appellees Cunningham Township, Dan Stebbins, and City of Urbana. |

Julia Rietz, State's Attorney, of Urbana (Joel Fletcher, Assistant State's Attorney, of counsel), for other appellees.

Mark P. Rotatori and Nicole C. Henning, of Jones Day, of Chicago, Catherine E. Livingston, of Jones Day, and Melinda Reid Hatton, both of Washington, D.C., for *amicus curiae* American Hospital Association.

Thomas M. Fahey, John J. Durso, Floyd D. Perkins, and Seth A. Horvath, of Nixon Peabody LLP, of Chicago, and Mark Deaton, of Naperville, for *amicus curiae* Illinois Health and Hospital Association.

John M. Izzo and Eugene C. Edwards, of Hauser Izzo, LLC, of Flossmoor, for *amici curiae* Illinois Association of School Boards *et al.*

Justices

JUSTICE THOMAS delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Freeman, Kilbride, Garman, Burke, and Theis concurred in the judgment and opinion.

## OPINION

¶ 1 Plaintiff, The Carle Foundation, filed a multicount action against numerous state and local taxing authorities to establish that four of its properties were exempt from real estate taxation during the assessment years 2004 through 2011. The circuit court of Champaign County granted plaintiff's motion for summary judgment on count II of the fourth amended complaint, which sought a declaration that plaintiff's exemption claims are governed by section 15-86 of the Property Tax Code (Code) (35 ILCS 200/15-86 (West 2014)). In addition, the circuit court entered a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) that there was no just reason to delay enforcement of or appeal from its decision. Defendants immediately appealed, and the appellate court addressed several issues in the course of ultimately reversing the circuit court's judgment on the grounds that section 15-86 facially violates article IX, section 6, of the Illinois Constitution (Ill. Const. 1970, art. IX, § 6). 2016 IL App (4th) 140795. Both plaintiff and the State defendants filed petitions for leave to appeal (Ill. S. Ct. R. 315 (eff. Jan. 1, 2015)), which we granted. For the reasons that follow, we vacate the appellate court's decision on the grounds that it lacked appellate jurisdiction under Rule 304(a), and we remand the cause to the circuit court for further

proceedings.

BACKGROUND

¶ 3        Plaintiff owns four parcels of land in Urbana that are used in connection with the operation of plaintiff's affiliate, Carle Foundation Hospital. Prior to 2004, the four parcels were deemed exempt from taxation under section 15-65(a) of the Code (35 ILCS 200/15-65(a) (West 2002)) on the grounds that plaintiff's use of them was for charitable purposes. Beginning in 2004, however, the Cunningham Township assessor terminated plaintiff's charitable-use tax exemptions for the four parcels. This continued through 2011.

¶ 4        For tax years 2004 through 2008, plaintiff filed applications with the county board of review to exempt the four parcels from taxation. Those applications were either withdrawn or denied or both. Plaintiff filed no such applications for tax years 2009 through 2011.

¶ 5        In 2007, plaintiff filed an action in the circuit court to establish that, for the tax years in question, the four parcels qualified for a charitable-use exemption under section 15-65(a). The defendants in the case consist of the Illinois Department of Revenue and its director, the Champaign County board of review and its members, the Champaign County supervisor of assessments, Champaign County, Cunningham Township, the city of Urbana, and the Cunningham Township assessor. Plaintiff brought the action pursuant to section 23-25(e) of the Code (35 ILCS 200/23-25(e) (West 2010)).

¶ 6        In November 2011, plaintiff filed its third amended complaint. The third amended complaint consisted of 26 counts. Taken together, counts I through XXIV sought a declaration that, under the standards set forth in section 15-65(a), the four parcels were and remained exempt from taxation for tax years 2004 through 2009. Count XXV sought the same relief on the grounds that the exemption plaintiff received prior to 2004 was never lawfully terminated. Count XXVI alleged breach of a 2002 settlement agreement entered into between plaintiff and various local taxing authorities.

¶ 7        On June 14, 2012, Public Act 97-688 took effect. See Pub. Act 97-688 (eff. June 14, 2012). Among other things, Public Act 97-688 enacted for the first time section 15-86 of the Code, which establishes a new charitable-use exemption specifically for hospitals. This created an issue in this case, namely, whether the exemption claims set forth in counts I through XXIV of the third amended complaint would continue to be governed by section 15-65(a) or whether those claims now would be governed by section 15-86. As a result, on April 16, 2013, the circuit court invited the parties to consider this question. The result was extensive briefing, followed by the filing of cross-motions for summary determination of major issue. See 735 ILCS 5/2-1005(d) (West 2012). In their respective motions, plaintiff argued that section 15-86 applies retroactively and therefore *does* govern its exemption claims, whereas the several defendants argued that section 15-86 is *not* retroactive and therefore does *not* govern plaintiff's exemption claims. On October 1, 2013, the circuit court issued a 29-page memorandum of opinion and order granting plaintiff's motion and denying defendants' motions. The county defendants filed a motion to reconsider, and on January 9, 2014, the circuit court entered a modified memorandum of opinion and order upon the denial of the county defendants' motion.

¶ 8        The very next day, on January 10, 2014, plaintiff filed its fourth amended complaint. In addition to bringing plaintiff's existing exemption claims forward through tax year 2011, the

fourth amended complaint contained new allegations relating to the recent enactment of section 15-86. Thus, counts III through XXXIV of the fourth amended complaint sought declarations that, for tax years 2004 through 2011, the four parcels qualified for an exemption under section 15-86. In the alternative, these same counts sought a declaration that the parcels likewise qualified for an exemption under section 15-65(a). In count II, plaintiff sought a declaratory judgment that "[s]ection 15-86 applies to any determination of [plaintiff's] entitlement to exemptions for the Four Parcels for tax assessment years 2004 through 2011." Rounding out the fourth amended complaint were counts I and XXXV, which mirrored counts XXV and XXVI of the third amended complaint, respectively.

¶ 9        Five weeks later, on February 4, 2014, plaintiff filed a motion for summary judgment on count II of the fourth amended complaint. According to plaintiff, that motion was brought "to facilitate interlocutory appellate review of the Court's determination, in connection with the parties' cross-motions for summary determination of major issue, that [plaintiff's] claims for property tax exemption are governed by section 15-86 of the Property Tax Code." The problem, according to plaintiff's motion, was that "[b]ecause the cross-motions for summary judgment did not dispose of an entire cause of action, it is questionable whether the ruling on those motions would have been immediately appealable without a petition for leave to appeal pursuant to Supreme Court Rule 308." Adding to this problem, plaintiff explained, was the fact that defendants "did not wish to pursue a Rule 308 appeal thereby effectively block[ing] immediate review of the Court's ruling." Accordingly, and "[b]elieving that a determination by the Appellate Court that [plaintiff's] exemption claims are governed by Section 15-86 would expedite and simplify the ultimate resolution of this litigation," plaintiff added count II to the fourth amended complaint for the purpose of obtaining a summary judgment on that count and, with it, a Rule 304(a) finding that would make that judgment immediately appealable as a matter of right. Indeed, according to plaintiff's motion, "[t]he issue on which [plaintiff] seeks summary judgment—i.e., the applicability of section 15-86 to its exemption claims—is identical to the issue decided by the Court in connection with the parties' cross-motions for summary determination of a major issue." Plaintiff's motion then explained that, as a result, "[r]ather than submit additional briefs in support of its motion for summary judgment, [plaintiff] relies on, and incorporates by reference, the briefs *** and exhibits filed by [plaintiff] in connection with the cross-motions for summary determination of major issue."

¶ 10        On August 28, 2014, the circuit court entered its modified memorandum of opinion and order granting plaintiff's motion for summary judgment on count II. In that order, the circuit court explained that "count II presents that very basic question[,] *** the question of what law is to be applied to this case—and no other question." According to the circuit court, "this most basic question must always be resolved as a threshold matter" because "if the applicable substantive law is not first ascertained then the very rights and obligations of the parties cannot be determined." Moreover, the circuit court noted that "not even the sufficiency of the pleadings in a case can be determined without first identifying the substantive law to be applied." For these reasons, the circuit court stressed that it was "obvious that resolution of the question of whether the standard established by section 15-86(c) applies to plaintiff's claims will not resolve the merits of those claims." Rather, "[r]esolution of that pure question of law will instead only mark an analytical point of departure for that ultimate inquiry." The

- 4 -

circuit court's order concluded with a Rule 304(a) finding, and defendants immediately appealed.

¶ 11    The appellate court reversed. 2016 IL App (4th) 140795. In the course of doing so, the appellate court addressed several issues, including whether it had appellate jurisdiction pursuant to Rule 304(a), whether a section 15-86 exemption can be sought in a section 23-25(e) judicial proceeding, and whether the General Assembly intended for section 15-86 to apply retroactively. The appellate court answered each of these questions in the affirmative. In the end, however, the appellate court concluded that section 15-86 facially violates article IX, section 6, of the Illinois Constitution, which in relevant part states that "[t]he General Assembly by law may exempt from taxation *** property used exclusively for *** charitable purposes." (Ill. Const. 1970, art. IX, § 6). 2016 IL App (4th) 140795, ¶¶ 163-64. Accordingly, the appellate court reversed the circuit court's granting of summary judgment on count II and remanded the cause for further proceedings. *Id.* ¶ 166.

¶ 12    Both plaintiff and the State defendants filed petitions for leave to appeal (Ill. S. Ct. R. 315 (eff. Jan. 1, 2015)), which we granted.

¶ 13                                    DISCUSSION

¶ 14                        *Illinois Supreme Court Rule 304(a)*

¶ 15    The first issue we must decide is whether appellate jurisdiction exists in this case. The ruling at issue here was brought before the appellate court based on Rule 304(a), which in relevant part provides:

> "If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010).

In construing and applying Rule 304(a), this court has drawn a clear distinction between judgments that dispose of "separate, unrelated claims," which are immediately appealable under Rule 304(a), and orders that dispose only of "separate issues relating to the *same* claim," which are not immediately appealable under Rule 304(a). (Emphasis in original.) *In re Marriage of Leopando*, 96 Ill. 2d 114, 119 (1983); see also *In re Marriage of Best*, 228 Ill. 2d 107, 114 (2008). The reason for this distinction is found in the policy considerations that inform Rule 304(a), which include "discouraging piecemeal appeals in the absence of some compelling reason and *** removing the uncertainty as to the appealability of a judgment which was entered on less than all of the matters in controversy." *In re Marriage of Lentz*, 79 Ill. 2d 400, 407 (1980).

¶ 16    In *Leopando*, the trial court entered an order dissolving the parties' marriage, followed by a separate order awarding permanent custody to the husband. The custody order contained a Rule 304(a) finding, and it also expressly stated that the issues of maintenance, property division, and attorney fees were reserved. In holding that the custody order was *not* an immediately appealable "final judgment" under Rule 304(a), this court explained:

> "A petition for dissolution advances a single claim; that is, a request for an order dissolving the parties' marriage. The numerous other issues involved, such as custody, property disposition, and support are merely questions *which are ancillary to*

the cause of action. [Citation.] They do not represent separate, unrelated claims; rather, *they are separate issues relating to the same claim*." (Emphasis added and in original.) *Leopando*, 96 Ill. 2d at 119.

The court then explained that "[t]his result is further compelled by the policy consideration upon which Rule 304(a) is based," which includes "discouraging piecemeal appeals." *Id.* According to the court, "[t]o interpret Rule 304(a) as plaintiff suggests would allow a party *** to file separate appeals from adverse judgments as to each issue involved in a dissolution proceeding. Our rule was not intended to promote such unnecessary piecemeal litigation arising out of the same proceeding." *Id.* at 119-20.

¶ 17    By contrast, in *Best*, the court held that the trial court's Rule 304(a) finding was proper, and in doing so the court drew important distinctions between that case and *Leopando*. In *Best*, the husband filed (1) a petition for dissolution of marriage and (2) a motion for declaratory judgment as to the validity and construction of the parties' premarital agreement. The trial court entered the requested declaratory judgment, finding that the premarital agreement was valid and enforceable and construing certain sections of that agreement. The trial court also entered a Rule 304(a) finding as to that judgment, and the husband immediately appealed. In holding that the Rule 304(a) finding in *Best* was proper, this court explained that, whereas the dissolution of the parties' marriage was the only "claim" in *Leopando*, *Best* involved two distinct claims: (1) a dissolution of marriage claim brought under the Marriage and Dissolution of Marriage Act (Marriage Act) and (2) a declaratory judgment claim brought under the declaratory judgment statute. *Best*, 228 Ill. 2d at 115. These claims not only had "distinctly different statutory bases," but just as importantly, "[the] declaratory judgment could be entered even if the dissolution petition were not granted." *Id.* The same could not be said of the custody order in *Leopando*, as that order involved an issue *ancillary to*—not independent from—the dissolution claim. Accordingly, the court in *Best* concluded that "the request for dissolution of the parties' marriage and the request for declaratory judgment on the validity and interpretation of the premarital agreement are not so closely related that they must be deemed part of a single claim for relief." *Id.*

¶ 18    The issue in this case is whether the circuit court's order granting plaintiff's motion for summary judgment on count II disposed of a "claim" that was separate from and unrelated to plaintiff's exemption claims or whether it merely resolved one "issue" that is part of or ancillary to those claims. We conclude that it resolved an "issue," not a "claim." Again, "where an order disposes only of certain issues relating to the same basic claim, such a ruling is not subject to review under Rule 304(a)." *Blumenthal v. Brewer*, 2016 IL 118781, ¶ 27. Here, count II of the fourth amended complaint sought a declaration as to what law governs counts III through XXXIV of the fourth amended complaint. What law governs a claim is not itself a "claim," as it resolves nothing other than the standard by which the underlying claim will be adjudicated. On the contrary, this question is a textbook example of an "issue" that exists only because of and ancillary to a "claim." It goes without saying that the exemption claims pled in counts III through XXXIV of the fourth amended complaint could not be adjudicated without first determining the governing law. In the same way, but for the pleading of the exemption claims in counts III through XXXIV of the fourth amended complaint, there would be neither cause nor occasion to determine what law governs them. In this way, the present case is very different from *Best*, which both plaintiff and the appellate

- 6 -

court cite in support of count II being a "claim" rather than an "issue." In *Best*, a declaration as to the validity and enforceability of the parties' premarital agreement could be sought not only *apart from* the dissolution proceeding but also even *absent* the dissolution proceeding. Indeed, whether a couple is bound by the terms of their premarital agreement is a question that exists wholly apart from whether their marriage should be dissolved, and it is a question the couple has every interest in knowing the answer to whether or not they are actively seeking the dissolution of their marriage. The same cannot be said of what law governs a legal claim, which is a question we ask only in service of that claim and would never ask absent or apart from that claim.

¶ 19    Our conclusion on this point is confirmed at numerous points in the proceedings below. To begin, there is the fact that the parties initially litigated the question raised in count II of the fourth amended complaint—*i.e.*, whether section 15-86 governs plaintiff's exemption claims—not through a stand-alone declaratory judgment claim but rather through cross-motions for summary determination of major issue relating to plaintiff's exemption claims. While plaintiff's third amended complaint was pending, the circuit court asked the parties to brief whether section 15-86 would apply to plaintiff's exemption claims. The parties complied and, pursuant to section 2-1005(d) of the Code of Civil Procedure (735 ILCS 5/2-1005(d) (West 2010)), filed cross-motions for summary determination of that question. The circuit court granted plaintiff's motion and declared that section 15-86 does apply to plaintiff's exemption claims. Again, all of this occurred while plaintiff's third amended complaint was pending. This is significant because, while plaintiff's third amended complaint contained all of plaintiff's exemption claims, it did not contain the declaratory judgment claim later pled in count II of the fourth amended complaint. In other words, before it was ever even pled as a stand-alone "claim," the question of whether section 15-86 governs plaintiff's exemption claims was fully litigated and adjudicated as an "issue" relating to and arising from those claims. This absolutely confirms that, rather than being a "claim" that is separate and distinct from plaintiff's exemption claims, the question posed in count II of the fourth amended complaint is simply an "issue" that is ancillary to those claims.

¶ 20    Similar confirmation is found in plaintiff's own motion for summary judgment on count II of the fourth amended complaint. In that motion, plaintiff explains that it added count II to the fourth amended complaint to "facilitate interlocutory appellate review of the Court's determination, in connection with the parties' cross-motions for summary determination of major issue, that [plaintiff's] claims for property tax exemption are governed by section 15-86 of the Property Tax Code." And this was necessary, plaintiff explained, "[b]ecause the cross-motions for summary judgment *did not dispose of an entire cause of action*" and therefore were not immediately appealable as a matter of right under Rule 304(a). (Emphasis added.) In other words, plaintiff's motion for summary judgment on count II admits that the question of whether plaintiff's exemption claims are governed by section 15-86 is a mere "issue" whose resolution "did not dispose of an entire cause of action." Under *Leopando*, that is the very definition of decisions that are *not* appealable under Rule 304(a). Yet according to plaintiff, the issue litigated in the cross-motions for summary determination "is identical to" the issue raised in count II of the fourth amended complaint. Needless to say, if this issue "did not dispose of an entire cause of action" *before* it was pled in the fourth amended complaint, it "did not dispose of an entire cause of action" *after* it was pled in the fourth amended complaint, as the issue itself never changed. The only thing that changed was *the*

*manner* in which the issue was raised, but nothing about that changes either *what* the issue is asking or *the effect* the answer has on this litigation.

¶ 21    Further confirmation of our conclusion is found in the circuit court's order granting plaintiff's motion for summary judgment on count II of the fourth amended complaint. Again, the question we are asking is whether that order disposed of a "claim" that was separate from and unrelated to plaintiff's exemption claims or whether it merely resolved an "issue" that was ancillary to or part of plaintiff's exemption claims. According to the order itself, it is "obvious that resolution of the question of whether the standard established by section 15-86(c) applies to plaintiff's [exemption] claims will not resolve the merits of those claims." Rather, "[r]esolution of that pure question of law will instead only mark an analytical point of departure for that ultimate inquiry." And the reason for this, the order explains, is that count II merely raises the same "basic question" that "must always be resolved" as a "threshold matter" in every case, namely, "the question of what law is to be applied." In other words, according to the circuit court's own order granting summary judgment on count II, that order does nothing to resolve the substantive merits of any of plaintiff's claims. Instead, it resolves only a "basic question" that exists in every case and that, absent a resolution of which, no legal claim can be adjudicated. Or, as the circuit court's order elsewhere puts it, "if the applicable substantive law is not first ascertained then the very rights and obligations of the parties cannot be determined." This is exactly correct, and it is exactly why we are faced here not with an order disposing of a "claim" but rather with an order disposing only of an "issue" relating to a claim.

¶ 22    Lastly, we find confirmation of our conclusion on this point in count II of the fourth amended complaint itself. It will be remembered that, in count I of the fourth amended complaint, plaintiff sought a declaration that it was entitled to a charitable-use exemption for the tax years in question on the grounds that the exemption previously granted to it was never lawfully terminated. In counts III through XXXIV of the fourth amended complaint, plaintiff sought the identical relief on the grounds that, during the tax years in question, it qualified for a charitable-use exemption under the applicable statutory criteria. Count II then sought a declaration that the applicable statutory criteria in relation to counts III through XXXIV is found in section 15-86 of the Code, rather than in section 15-65(a). The interesting thing for our purposes is that, at the beginning of count II, plaintiff concedes that a judgment in plaintiff's favor on count I "would moot [plaintiff's] claims, in Counts II through XXXIV, relating to a *de novo* determination of [plaintiff's] entitlement to exemptions on the Four Parcels for those years." Now, it makes perfect sense that a judgment in plaintiff's favor on count I would moot counts III through XXXIV, as those counts all seek identical relief—namely, a declaration that plaintiff is entitled to a charitable-use exemption for the tax years in question. But why would such a judgment moot count II if, as plaintiff insists, count II represents a "claim" that is wholly "separate" and "distinct" from its exemption claims? The answer is that it would not. Consider, for example, the situation in *Best*: no judgment on the dissolution petition in that case could possibly have mooted the declaratory judgment count, just as no judgment on the declaratory judgment count could possibly have mooted the dissolution petition. See *Best*, 228 Ill. 2d at 115 (explaining that "[the] declaratory judgment could be entered even if the dissolution petition were not granted"). This is because the two claims in *Best* were in fact "separate" and "distinct," such that the parties' right to an adjudication of one would remain irrespective of how the other was resolved. In this case, by

contrast, plaintiff has it exactly right—a judgment in plaintiff's favor on count I would absolutely moot count II because, once plaintiff was granted the exemptions under count I, there would be no need whatsoever to ascertain the law governing counts III through XXXIV. In other words, and as plaintiff readily concedes in the fourth amended complaint, a determination that plaintiff is entitled to the exemptions under count I moots the question of what law governs the exemption claims pled in counts III through XXXIV. This is absolute confirmation that, rather than being a "claim" that is "separate" and "distinct" from plaintiff's exemption claims, the question posed in count II is merely an "issue" that is ancillary to and part of those claims.

¶ 23    Again, the question before us is whether the circuit court's order granting plaintiff's motion for summary judgment on count II of the fourth amended complaint disposed of a "claim" that is "distinct" and "separate" from plaintiff's exemption claims or whether that order disposed only of an "issue" that is ancillary or related to those claims. Or to put it another way, are plaintiff's exemption claims and plaintiff's request for a declaration as to what law governs those claims matters that are "so closely related that they must be deemed part of a single claim for relief"? See *id.* The question answers itself. Indeed, to borrow a phrase from *Leopando*, "it is difficult to conceive of a situation in which the issues are more interrelated" than the pleading of a claim and the determination of what law governs that claim. *Leopando*, 96 Ill. 2d at 119. The two matters are inextricably linked and simply cannot exist without the other. For this reason, and for the reasons set forth above, we conclude that the circuit court's order granting plaintiff's motion for summary judgment on count II of the fourth amended complaint disposed not of a "claim," but only of an "issue" relating to a claim. Accordingly, that order was not appealable under Rule 304(a), and the appellate court lacked jurisdiction to review it.

¶ 24                                    *Declaratory Judgment*
¶ 25    In reaching this result, we feel compelled to address an additional matter that, while intimately linked to the Rule 304(a) question, is not exactly the same. Both plaintiff and the appellate court insist that count II represents a "claim" rather than an "issue," based largely on the fact that count II is pled as a stand-alone declaratory judgment claim pursuant to the declaratory judgment statute. On this point, both plaintiff and the appellate court are guided by this court's decision in *Best*, which attached particular significance to the fact that the husband in that case "sought nondeclaratory relief under the Marriage Act, as well as declaratory relief under the declaratory judgment statute." *Best*, 228 Ill. 2d at 115. This meant that, unlike *Leopando*, in which the only statute at issue was the Marriage Act, "the two requests for relief [in *Best*] had distinctly different statutory bases." *Id.* According to plaintiff and the appellate court, the exact same situation exists here, where plaintiff's exemption claims are brought pursuant to section 23-25(e) of the Code, whereas count II is brought pursuant to the declaratory judgment statute. Because of this, the argument goes, the same conclusion should be reached here that was reached in *Best*, namely, that plaintiff's declaratory judgment claim and plaintiff's exemption claims "are not so closely related that they must be deemed part of a single claim for relief."

¶ 26        This argument assumes, of course, that count II is a proper declaratory judgment count. In fact, it is not, and that is the matter we must now address. The Illinois declaratory judgment statute provides in pertinent part:

> "No action or proceeding is open to objection on the ground that a merely declaratory judgment or order is sought thereby. The court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination, at the instance of anyone interested in the controversy, of the construction of any statute, municipal ordinance, or other governmental regulation *** and a declaration of the rights of the parties interested. *** The court shall refuse to enter a declaratory judgment or order, if it appears that the judgment or order, would not terminate the controversy or some part thereof, giving rise to the proceeding." 735 ILCS 5/2-701(a) (West 2010).

In construing this statute, this court has explained that "[t]he essential requirements of a declaratory judgment action are: (1) a plaintiff with a legal tangible interest; (2) a defendant having an opposing interest; and (3) an actual controversy between the parties concerning such interests." *Beahringer v. Page*, 204 Ill. 2d 363, 372 (2003). In this context, "actual controversy" means "a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof." *Underground Contractors Ass'n v. City of Chicago*, 66 Ill. 2d 371, 375 (1977). As for the statute's purpose, this court has explained that the declaratory judgment procedure allows " ' "the court to take hold of a controversy one step sooner than normally—that is, after the dispute has arisen, but before steps are taken which give rise to claims for damages or other relief. The parties to the dispute can then learn the consequences of their action before acting." ' " *Kaske v. City of Rockford*, 96 Ill. 2d 298, 306 (1983) (quoting *Buege v. Lee*, 56 Ill. App. 3d 793, 798 (1978), quoting Ill. Ann. Stat., ch. 110, ¶ 57.1, Historical and Practice Notes, at 132 (Smith-Hurd 1968)). Or to put it another way, "[t]he declaratory judgment procedure was designed to settle and fix rights before there has been an irrevocable change in the position of the parties that will jeopardize their respective claims of right. [Citation.] The remedy is used to afford security and relief against uncertainty so as to avoid potential litigation." *First of America Bank, Rockford, N.A. v. Netsch*, 166 Ill. 2d 165, 174 (1995).

¶ 27        As to the statute's requirement that "[t]he court shall refuse to enter a declaratory judgment or order, if it appears that the judgment or order, would not terminate the controversy or some part thereof, giving rise to the proceeding," this court has never construed the phrase "the controversy or some part thereof, giving rise to the proceeding." 735 ILCS 5/2-701(a) (West 2010). However, this phrase *is* construed in the declaratory judgment statute's historical and practice notes (Notes), to which this court previously has referred when construing the statute. See, *e.g.*, *Beahringer*, 204 Ill. 2d at 373; *Kaske*, 96 Ill. 2d at 306. According to the Notes:

> "The phrase, 'or some part thereof,' in the Illinois statute recognizes the fact that litigation may be many-sided and the administration of justice is advanced if the narrowing and limiting conception of singleness implied in the categorical use of such terms as 'controversy' and 'transaction' is avoided. *It is not intended by the phrase to*

- 10 -

*permit piecemeal litigation*. *** The phrase 'or some part thereof' is in harmony with other provisions of the Civil Practice Law which encourage *joinder of claims and the disposition in one suit of as many existing disputes between the parties as is possible* commensurate with the due and proper administration of justice." (Emphases added.) Ill. Ann. Stat., ch. 110, ¶ 57.1, Historical and Practice Notes, at 11-12 (Smith-Hurd 1983).

Based on these Notes, our appellate court has concluded that "the phrase 'some part' of the controversy, *does not mean an element of a single claim, but, rather, it means an entire claim which is part of more than one claim*." (Emphasis added.) *Marlow v. American Suzuki Motor Corp.*, 222 Ill. App. 3d 722, 730 (1991). This is undoubtedly correct, as to hold otherwise would be to "permit piecemeal litigation," which according to the Notes is something the declaratory judgment statute was never intended to permit. Indeed, if impermissible piecemeal litigation results from the appeal of "issues" as opposed to "claims" in the context of Rule 304(a), it makes perfect sense that the same would be true in the context of declaratory relief, which is exactly what the Notes are saying.

¶ 28 In light of these principles, let us consider the declaratory judgment action that plaintiff endeavored to bring in count II of the fourth amended complaint. To begin with, on its face, that action did not seek a declaration as to an "actual controversy." Again, in this context, "actual controversy" refers to "a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof." *Underground Contractors Ass'n*, 66 Ill. 2d at 375. Here, count II of the fourth amended complaint sought a declaration as to whether section 15-86 applies to plaintiff's exemption claims. However, such a declaration would do nothing "to aid in the termination of the controversy or some part thereof," as that question already had been settled by the time plaintiff filed the fourth amended complaint. Indeed, whether section 15-86 applies to plaintiff's exemption claims was the subject of the parties' cross-motions for summary determination of major issue, and it is the very "major issue" that the circuit court determined in its order disposing of those motions. Thus, when plaintiff filed count II of the fourth amended complaint, whether section 15-86 applies to plaintiff's exemption claims was no longer in question, as the circuit court already had declared that it does. Plaintiff concedes as much in its motion for summary judgment on count II of the fourth amended complaint, where plaintiff assures the circuit court that "[t]he issue on which [plaintiff] seeks summary judgment—*i.e.*, the applicability of section 15-86 to its exemption claims—*is identical to the issue decided by the Court in connection with the parties' cross-motions for summary determination of major issue*." (Emphasis added.)

¶ 29 Equally problematic is the fact that count II of the fourth amended complaint in no way seeks "an immediate and definitive determination of the parties' rights." On the contrary, it seeks only a declaration as to what law the circuit court will apply in the course of determining those rights. The claimed right in this case is a right to a charitable-use tax exemption for the tax years in question. The circuit court's order granting plaintiff's motion for summary judgment on count II does nothing to determine whether such a right exists. Indeed, whether plaintiff possesses such a right is as open a question today as it was in 2007, when plaintiff first filed its complaint. And this is because, rather than asking the circuit court to determine whether such a right exists, plaintiff asked only for a declaration "that [s]ection 15-86 applies to the determination of [plaintiff's] entitlement to exemptions for the

Four Parcels for tax years 2004 through 2011." Obviously, a declaration of what law applies to the determination of a party's rights is not itself a determination of that party's rights. Yet a determination of what law applies is the only determination that count II of the fourth amended complaint seeks.

¶ 30    Count II of the fourth amended complaint also suffers from the fact that the circuit court's entry of summary judgment on that count did nothing to "terminate the controversy or some part thereof." In this context, "some part" of the controversy refers to a claim in its entirety, not to a mere element of a claim. See *Marlow*, 222 Ill. App. 3d at 730. Yet as we discussed at length above, the circuit court's order granting summary judgment on count II disposed not of a "claim" but only of an "issue" relating to a claim. Again, what law governs a "claim" is not itself a claim, and no "claim" is terminated simply by announcing the governing legal standard. On the contrary, such an announcement simply marks "an analytical point of departure" for a claim's adjudication, a point made explicitly in the circuit's order granting summary judgment on count II. Legally speaking, then, the parties were in exactly the same place after the entry of summary judgment as they were before it. The only difference was that the parties now knew what legal standard would govern plaintiff's assertion of the claimed legal right. Thus, far from terminating "the controversy or some part thereof," the circuit court's entry of summary judgment on count II was both sought and served to move the controversy forward.

¶ 31    Finally, informing and underlying all of the aforementioned problems is the very purpose for which count II of the fourth amended complaint was brought. Indeed, the principal reason that count II fails as a declaratory judgment action is that it was never meant to resolve an actual controversy in the first place. Rather, as plaintiff candidly concedes in its motion for summary judgment, count II of the fourth amended complaint was brought solely "to facilitate interlocutory appellate review of the Court's determination, in connection with the parties' cross-motions for summary determination of major issue, that [plaintiff's] claims for property tax exemption are governed by section 15-86 of the Property Tax Code." Or, as plaintiff more fully explains in its opening brief to this court:

> "The Foundation's declaratory judgment claim raised, as a stand-alone cause of action in Count II of the Fourth Amended Complaint, the same basic issue regarding the applicability of Section 15-86 on which the Foundation had prevailed on its motion for summary determination. The Foundation's plan was to file a motion for summary judgment on Count II limited to that issue. By requesting a finding under Rule 304(a) that there was no just reason for delaying enforcement or appeal of the entry of summary judgment on that Count, the Foundation sought to require the defendants to invoke the appellate court's jurisdiction in accordance with *Best*. The Foundation's express goal was to obtain a definitive determination regarding the applicability of Section 15-86 to the Foundation's exemption claims so as to simplify and streamline the ensuing trial."

Thus, rather than bringing count II for the purpose of securing a declaration of unresolved rights as to an open legal controversy, plaintiff brought count II solely as a means of securing a Rule 304(a) finding as to the circuit court's determination of the controlling legal standard, a matter on which plaintiff already "had prevailed on its motion for summary determination." This is not what a declaratory judgment action is for, and the fact that this was plaintiff's

explicit purpose in bringing one goes a long way toward explaining many of that action's deficiencies.

¶ 32 *Supervisory Authority*

¶ 33   At this point, we are left with only one question, and that is whether to address the merits of this appeal despite the lack of Rule 304(a) jurisdiction. Though the various parties to this appeal disagree on whether Rule 304(a) jurisdiction exists in this case, they are of a single mind when it comes to insisting that this court review the appellate court's decision on the merits. In support, the parties point out that the present litigation has been dragging on for almost 10 years now and that an authoritative resolution as to section 15-86's constitutionality will help to move the case toward a final resolution. In addition, the parties note that an authoritative resolution as to section 15-86's constitutionality will provide guidance both to the Department of Revenue and to other courts in proceedings involving similar exemption claims brought by Illinois hospitals. For both of these reasons, the parties ask that, should this court conclude that Rule 304(a) jurisdiction is lacking, we nevertheless address the merits of the case under our supervisory authority. See, *e.g.*, *In re Estate of Funk*, 221 Ill. 2d 30, 97 (2006) (this court's supervisory authority is "unlimited in extent and hampered by no specific rules or means for its exercise").

¶ 34   For two independent reasons, we decline the parties' request to address the merits of this appeal. First, and most importantly, we have emphasized above that neither Rule 304(a) nor the declaratory judgment statute was intended to facilitate piecemeal litigation. Yet piecemeal litigation is precisely what the parties here intended, and it is precisely what a decision addressing the merits would yield. Again, plaintiff sought a Rule 304(a) finding as to an issue it admits "did not dispose of an entire cause of action," and it did so solely to "expedite and simplify the ultimate resolution of this litigation." That is the very definition of piecemeal litigation, and it is something this court is not inclined to accommodate. Second, this court's long-standing rule is that "cases should be decided on nonconstitutional grounds whenever possible, reaching constitutional issues only as a last resort." *In re E.H.*, 224 Ill. 2d 172, 178 (2006). Consequently, "courts *** must avoid reaching constitutional issues when a case can be decided on other, nonconstitutional grounds," and such issues "should be addressed only if necessary to decide a case." *People v. Hampton*, 225 Ill. 2d 238, 244 (2007). Here, there are issues pending in this case that, depending upon how they are resolved, may moot the question of section 15-86's constitutionality. For example, there is the claim pled in count I of the fourth amended complaint, which seeks exactly the same relief as the claims pled in counts III through XXXIV, on grounds having nothing to do with section 15-86. Indeed, in count II of the fourth amended complaint, plaintiff itself concedes that a judgment in plaintiff's favor on count I "would moot [plaintiff's] claims, in Counts II through XXXIV, relating to a *de novo* determination of [plaintiff's] entitlement to exemptions on the Four Parcels for those years." As far as this court knows, the circuit court has yet to enter judgment on count I. Until that happens, any pronouncement from this court concerning section 15-86's constitutionality would be decidedly premature. Likewise, there has yet to be any determination in this case that plaintiff even qualifies for a section 15-86 exemption in the first place. If it turns out that plaintiff does not, then that too would constitute "other, nonconstitutional grounds" for disposing of plaintiff's exemption claims. Suffice it to say, then, we have hardly reached a point of "last resort," where a ruling from

this court concerning section 15-86's constitutionality is the only remaining way of deciding this case. Accordingly, the exercise of this court's supervisory authority to address that question is unwarranted.

¶ 35                                                        CONCLUSION

¶ 36        For all of the reasons set forth above, we conclude that the circuit court's entry of a Rule 304(a) finding in this case was improper and that the appellate court therefore lacked jurisdiction to review the circuit court's order granting plaintiff's motion for summary judgment on count II of the fourth amended complaint. Accordingly, we vacate the appellate court's decision in its entirety and remand this cause to the circuit court for further proceedings consistent with this decision.

¶ 37        Appellate court judgment vacated.

¶ 38        Cause remanded.